Kristin GALATOWITSCH and Dennis Galatowitsch,
Plaintiffs-Respondents,

v.

James WANAT and Barbara Wanat, Defendants-
Appellants,

EAGAN AGENCY, LTD. and Coldwell Banker Classic Inc.,
Third-Party Defendants.

Court of Appeals

*No. 00–0199. Submitted on briefs April 28, 2000.—Decided
October 26, 2000.*

## 2000 WI App 236

(Also reported in 620 N.W.2d 618.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David L. Werth* of *Van Epps and Werth* of Weyauwega.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Kristin K. Galatowitsch* of *Kubasta, Rathjen & Bickford* of Wautoma.

Before Dykman, P.J., Vergeront, Deininger, JJ.

¶ 1. VERGERONT, J.   The issue on this appeal is whether the sellers in a failed residential real estate transaction are precluded, either by the terms of the purchase agreement or the doctrine of election of remedies, from recovering actual damages for the buyers' breach solely because the sellers requested the earnest money as liquidated damages and, in their initial complaint, requested the earnest money as a remedy. The buyers, James and Barbara Wanat, appeal a judgment of the trial court awarding the sellers, Kristin and Dennis Galatowitsch, actual damages in the amount of $10,607 plus costs for the Wanats' breach of the agreement. The Wanats contend the Galatowitsches elected a remedy under the agreement when they requested the earnest money as liquidated damages and then sued to recover it when they did not receive it; that

election, the Wanats contend, precludes the Galatowitsches from amending their complaint to request actual damages.

¶ 2. We conclude that the buyer-default provision of the purchase agreement does not prevent the sellers, after they requested the earnest money as liquidated damages but did not receive it, from directing the return of the earnest money to the buyers and suing for actual damages. We also conclude that the doctrine of election of remedies does not preclude the sellers under these circumstances from amending their complaint to request actual damages instead of liquidated damages. We therefore affirm.

## BACKGROUND

¶ 3. The Wanats, through a realtor, submitted an offer to purchase the Galatowitsches' home on a WB–11 Residential Offer to Purchase form. After counteroffers the parties entered into a purchase agreement on May 22, 1998, pursuant to which the Wanats deposited $2,000 as earnest money with Coldwell Banker Classic Inc., the Galatowitsches' real estate broker. The agreement contained a financing contingency available until June 1, 1998, and required the Wanats to notify the Galatowitsches on or before that date if they could not obtain the financing.

¶ 4. The Wanats failed to obtain the financing and did not notify the Galatowitsches of this fact on or before June 1, 1998. Shortly thereafter the Galatowitsches sent a letter to the Wanats stating the Wanats had breached the agreement by that failure to notify and requested the earnest money as liquidated damages. Not receiving the earnest money, the Galatowitsches filed an action on November 16, 1998, naming the Wanats and Coldwell Banker as defend-

ants. The complaint alleged the breach of the agreement and the failure to give the Galatowitsches the earnest money upon their request. It demanded judgment in the amount of $2,000, plus interest and costs. In their answer, the Wanats denied a breach.[1]

¶ 5. Approximately one month later, the Galatowitsches sold their home to other buyers. They amended the complaint to demand actual damages based on the difference in the later sale price and that agreed to with the Wanats. The amended complaint alleged that the Galatowitsches had, on the date they filed the amended complaint, directed Coldwell Banker to return the earnest money to the Wanats.[2] In their amended answer the Wanats asserted that the court lacked subject matter jurisdiction because of the Galatowitsches' choice to request the earnest money as liquidated damages.

¶ 6. Coldwell Banker answered the first complaint by denying that it had failed to release the earnest money to the Galatowitsches and alleging it had no authority to do so without a mutual release or court order. It asserted an interpleader claim because of competing claims on the earnest money, seeking to pay the $2,000 to the court and be relieved of further liability. In response to the amended complaint, Coldwell Banker added as a defense that on March 29, 1999, they forwarded a cancellation and mutual release to the Wanats that allowed Coldwell Banker to

---

[1] The Wanats also filed a third-party complaint against Eagan Agency, Ltd., the employer of their real estate agent. The agency was dismissed before trial.

[2] The amended complaint was filed on March 15, 1999. It alleges that the broker was directed to return the earnest money to the Wanats on March, 15, 1998, but we assume the correct year of the request is 1999.

disburse the earnest money, but the Wanats refused to sign it.

¶ 7.   The matter was tried to the court. Before presentation of the evidence, Coldwell Banker was dismissed upon paying the earnest money into court, save $250 it retained as attorney fees. The Wanats stipulated they did not have financing and did not provide written notice of such until June 2, 1998. The evidence at trial focused on the Wanats' defense that the Galatowitsches, by their conduct, had waived the June 1, 1998 deadline. The Galatowitsches also presented evidence on the actual damages.

¶ 8.   The court found the Wanats had breached the agreement and the Galatowitsches had not waived the breach. It determined that "the [Galatowitsches] are not precluded from seeking actual damages as their complaint alleges that they attempted to return the security deposit, thus they are not limited to liquidated damages. . . ." The court found the Galatowitsches' damages—the difference between the sale price in the contract with the Wanats and the ultimate sale price, less adjustments for costs of sale—were $10,607.

## DISCUSSION

¶ 9.   The Wanats contend the trial court erred in awarding actual damages to the Galatowitsches because, by requesting the earnest money as liquidated damages and then suing to recover it when they did not receive it, the Galatowitsches were bound by the election of that remedy.[3] The Wanats rely on both the terms of the agreement and the doctrine of election of remedies in their argument.

---

[3] The Wanats do not appeal the trial court's determination that they breached the agreement.

¶ 10.   The relevant default provision of the parties' agreement, contained in the initial offer to purchase, provides:

If Buyer defaults, Seller may:

(1)     sue for specific performance and request the earnest money as partial payment of the purchase price; or

(2)     terminate the Offer and have the option to:

    (a)     request the earnest money as liquidated damages; or

    (b)     direct Broker to return the earnest money and have the option to sue for actual damages.

¶ 11.   The Wanats assert that under paragraph 2, once the sellers request the earnest money as liquidated damages, even if they do not receive it and must sue to recover it, they are limited to that request and may not elect option (b). The Galatowitsches, on the other hand, contend this language does not preclude the seller from electing option (b) if they request the earnest money and the buyer does not permit them to have it. A resolution of the proper construction of this contract language presents a question of law, which we review de novo. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

¶ 12.   In *Zimmerman v. Thompson*, 16 Wis. 2d 74, 75, 114 N.W.2d 116 (1962), the court construed the buyer-default provision in a prior version of the WB Residential Offer to Purchase form, which provided: "[s]hould the . . . buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the

Seller, be forfeited as liquidated damages and shall be paid to or retained by the Seller, subject to deduction of broker's commission and disbursements, if any." The buyer paid $500 down but failed to pay the balance of the purchase price. The seller sold the property to a third party, retained the down payment of the first proposed buyer, and sued for an amount alleged to be the actual damages after crediting the $500.

¶ 13.   The court in *Zimmerman* held that the contract gave the seller the option of keeping the deposit money as liquidated damages, and that the seller also had the option of recovering whatever actual damages he could prove, but the seller did not have the right to both:

> If he chooses liquidated damages he may retain the down payment without further fuss or bother. If he chooses actual damages the contract gives him no additional present, simultaneous, right to retain the down payment. He has retained it and is now trying to expand the limited right of retention into a right to keep the money and apply it on whatever larger damages he can establish. The contract does not so provide.

*Id.* at 76–77. Because the contract gave the seller the right to retain the down payment only if he opted to take that amount in liquidated damages, the court concluded that in keeping the down payment the seller "had exercised his option to treat the cash in his hands as liquidated damages. Accordingly, no cause of action for actual damages remains to him." *Id.* at 77.

¶ 14.   Because the language of the buyer-default provision in *Zimmerman* differs from this case, *Zimmerman* does not fully resolve the question of the

565

proper construction of this agreement. However, *Zimmerman* is helpful because it explains the purpose of allowing the seller to elect the earnest money as liquidated damages is to allow the seller a remedy "without further fuss or bother." And it also tells us something a seller may *not* do: both retain the earnest money as liquidated damages "without the fuss or bother" of a lawsuit *and* bring a suit for additional damages.[4]

¶ 15. Turning to paragraph 2 of the buyer-default provision in this contract, we conclude that both parties' constructions are reasonable and, therefore, the terms are ambiguous. *See Borchardt*, 156 Wis. 2d at 427. Option (a) states only that the earnest money is "requested," not that it is also to be "received," which supports the Wanats' construction. On the other hand, option (a) does not mention a suit, while option (b) does, thus suggesting that option (a) does not contemplate a suit by the seller to recover the earnest money requested, but, instead, receipt without a suit. When contract terms are ambiguous, we construe them so as to make a rational business instrument and to effectu-

---

[4] The Galatowitsches cite a number of cases that follow and discuss *Zimmerman v. Thompson*, 16 Wis. 2d 74, 114 N.W.2d 116 (1962), but they are less factually similar to this case, and do not add to *Zimmerman* for purposes of resolving this appeal. In *Moritz v. Broadfoot*, 35 Wis. 2d 343, 151 N.W.2d 142 (1967), and *Sorce v. Rinehart*, 69 Wis. 2d 631, 230 N.W.2d 645 (1975), the sellers both kept the earnest money and sought the remedy of specific performance, which, the court held, was permissible. In *Mansfield v. Smith*, 88 Wis. 2d 575, 277 N.W.2d 740 (1979), the court was concerned with the seller's right under the purchase agreement to choose the earnest money as liquidated damages insofar as it affected the broker's right to compensation under the listing agreement.

ate what appears to be the intent of the parties. *See id.* Because the disputed terms are contained in the WB–11 Residential Offer to Purchase form, which has been approved by the Wisconsin Department of Regulation and Licensing, *see* WIS. ADMIN. CODE § RL 16.03 note, we conclude that one purpose of the agreement as a whole is to provide terms for the purchase of residential real estate that are reasonably fair to both the buyer and the seller. We examine the disputed provision with this in mind.

¶ 16.   As the court in *Zimmerman* pointed out, when the buyer breaches and the seller receives the earnest money as liquidated damages, the seller benefits by having a speedy and inexpensive means to recover some damages, although perhaps not all. The buyer also benefits by not having to defend an action in court with the exposure of greater damages. However, if the seller requests the earnest money as liquidated damages for a breach but does not receive it, the seller must expend the time and money to file a lawsuit. Thus, the seller does not have the benefit of a speedy, inexpensive means to recover some damages, but, under the Wanats' interpretation, the buyer still benefits because in the suit the seller must bring, the damages are limited to the amount of the earnest money. It is true that the seller in this scenario must prove only the breach, and not the actual damages. However, if the seller's actual damages exceed the earnest money, that is not a benefit to the seller, but rather, a serious disadvantage.

¶ 17.   This imbalance is significant because of the buyer's role under other contract provisions in deciding whether the seller receives the earnest money when the seller requests it as liquidated damages. The agreement provides that if the offer does not close:

567

[T]he earnest money shall be disbursed according to a written disbursement agreement signed by all Parties to this Offer. If said disbursement agreement has not been delivered to broker within 60 days after the date set for closing, broker may disburse the earnest money:

(1)     as directed by an attorney who has reviewed the transaction and does not represent Buyer or Seller;

(2)     into a court hearing a lawsuit involving the earnest money and all Parties to this Offer;

(3)     as directed by court order; or

(4)     any other disbursement required or allowed by law.

Thus, if the seller requests the earnest money as liquidated damages and the buyer disputes the agreement was breached, the broker may not disburse the earnest money except under one of the four specified conditions. Under the Wanats' construction, the buyer has little incentive to agree to the seller's request for the earnest money as liquidated damages unless the buyer is convinced the seller's position on breach is very strong: if the buyer does not agree, the seller will have to file a court action and prove a breach, and can recover no more than the earnest money. By the same token, under the Wanats' construction, a seller has little incentive to request the earnest money as liquidated damages unless the seller is convinced he or she cannot prove damages in a greater amount: if the buyer does not agree to the request, the seller will have to sue to prove a breach and will be limited to the earnest money as liquidated damages. The effect discourages the disbursement of earnest money to the seller as a speedy and inexpensive means to settle disputes.

¶ 18. The construction proposed by the Galatowitsches is more balanced in its impact on the interests of the two parties and more likely to encourage settlement. The seller may request the earnest money as liquidated damages without the risk of having to file a suit in which the seller cannot recover all damages even if the seller proves a breach. Upon the seller's request, the buyer has the opportunity to evaluate the strength of the seller's claim of breach, the likely amount of damages and their susceptibility of proof, and to either agree or disagree to the disbursement of the earnest money as liquidated damages. If the buyer agrees, the dispute is resolved. If the buyer disagrees, the buyer understands he or she may have to defend a suit for breach of the agreement and may have to pay actual damages; however, the seller must direct the return of the earnest money to the buyer before seeking actual damages.

¶ 19. We conclude that a seller's request for the earnest money as liquidated damages under option (a) does not foreclose the exercise of option (b) if the seller does not receive the earnest money. Compared to the construction proposed by the Wanats, this construction is more consistent with the purpose of liquidated damages; it is more consistent with the purpose of encouraging settlement of disputes, which is a rational purpose in the context of this type of transaction; and it is a fairer balance of the competing interests of the buyer and seller.

¶ 20. We next consider the Wanats' argument that case law on the doctrine of election of remedies precludes the Galatowitsches from amending their complaint for actual damages after requesting the earnest money as liquidated damages and filing the initial complaint. The Wanats rely on *Gaugert v. Duve*, 217

Wis. 2d 164, 579 N.W.2d 746 (Ct. App. 1998), which, in turn, relies on *Stadler v. Rohm*, 40 Wis. 2d 328, 161 N.W.2d 906 (1968), for an explanation of the doctrine precluding the election of two inconsistent remedies. *Stadler* held that a buyer who initiated an action for specific performance of a real estate purchase agreement, and for damages for certain defects in the property, was precluded from later amending the complaint to seek rescission of the contract. The court reasoned that the initial complaint recognized and affirmed the contract, which is inconsistent with a request for rescission of the contract, and, once having chosen the former, the buyer lost the right to rescind. *See id.* at 334–36.[5]

¶ 21.   While a claim for breach of contract is considered inconsistent with a claim for rescission of a contract, the same is not true for alternative remedies for a claim of breach of contract. The court in *Pierson v. Dorff*, 198 Wis. 43, 52–53, 223 N.W. 579 (1929), held that a seller who counterclaimed for specific performance in a buyer's suit for the earnest money could amend the counterclaim and ask for damages, after having sold the property before trial. The court explained that, unlike an action on a contract for breach and an action to rescind a contract, which are inconsistent because the former stands on the contract and the latter seeks to set it aside, specific performance

---

[5] The court in *Stadler v. Rohm*, 40 Wis. 2d 328, 337–38, 161 N.W.2d 906 (1968), recognized that the buyer's election was not irrevocable if the buyer was not aware of "substantial facts," which, if known, might have caused the buyer to make another choice, and if the buyer could not have reasonably known those facts. However, the court concluded the buyer did have the necessary information. *See id.* at 340.

and damages are both based on the contract. *See id.* at 51–53. They are alternative remedies for that breach, and, although one or the other must be elected at some stage in the proceeding, the pleading may request both. *See id.* at 52–53. We applied *Pierson* in *Yee v. Giuffre*, 176 Wis. 2d 189, 194–95, 499 N.W.2d 926 (Ct. App. 1993). In *Yee* we held that a seller who requested specific performance and, in the alternative, actual damages for a buyer's breach was not precluded from abandoning the request for specific performance after the property's sale to other buyers, and pursuing only the request for damages.[6]

¶ 22.   Just as the remedy of specific performance and the remedy of actual damages are alternative remedies for a claim of breach of contract, so, too, are the remedies of liquidated damages and actual damages. Following the reasoning of *Pierson*, we conclude that a party who has requested but not received the earnest money as liquidated damages and sues to recover is not precluded thereby from amending the complaint to request the alternative remedy of actual damages. Of course, there may be a stage of the proceeding beyond

---

[6] In *Yee v. Giuffre*, 176 Wis. 2d 189, 191, 499 N.W.2d 926 ( Ct. App. 1993), the seller demanded the earnest money as part payment for specific performance, which the court in *Moritz* held permissible. (In *Moritz*, the contract did not expressly provide the seller with that option, as does the Galatowitsch/Wanat contract.) When the seller in *Yee* sold the property and abandoned specific performance as a remedy, the buyer claimed that the seller had made an irrevocable election of a remedy, and, because the buyer could not now specifically perform the contract, the seller was limited to the earnest money as liquidated damages. *Id.* at 193–94. The *Yee* court addressed the contract provision on the disbursement of the earnest money, which differs from that in the Galatowitsch/Wanat contract, but did not address the buyer-default provision.

which such an amendment is not permitted by the court. However, in this case, the Galatowitsches amended the complaint within six months, which they may do as of right under WIS. STAT. § 802.09(1) (1997–98).[7] There may also be cases in which a change in the election of remedy would not be permitted because the party had materially changed position in reliance on the initial choice. *See* RESTATEMENT (SECOND) OF THE LAW, Contracts 2d § 378 (1981) (when the other party has "materially changed his position in reliance on the original choice . . . a shift [is] . . . precluded by the election of the first;" a change is material if changing remedies would be unjust). However, the Wanats do not claim they changed their position in reliance on the Galatowitsches' request for the earnest money as liquidated damages such that it is unjust to permit the Galatowitsches to seek actual damages instead.

¶ 23. We therefore conclude the Galatowitsches are not precluded, either by the terms of the purchase agreement or the doctrine of election of remedies, from amending their complaint to request actual damages. Of course, under the buyer-default provision a condition of suing for actual damages is that the seller direct the broker to return the earnest money to the buyer. The Galatowitsches alleged in the amended complaint that they did so. The Wanats do not argue on appeal that the Galatowitsches did not do that, nor that they did not prove that they did. If we are mistaken and the Wanats do intend to raise either of these arguments on appeal, we conclude the record is insufficient for them

---

[7] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

to do so.[8] Therefore, we do not address this point further. We conclude the trial court correctly determined the Galatowitsches were entitled to their actual damages.

*By the Court.*—Judgment affirmed.

[8] In their initial post-trial brief, the Wanats stated "there is no record" of the Galatowitsches directing their broker to return the earnest money. The Galatowitsches in response contended they were prepared at trial to present testimony that Coldwell Banker's attorney had made numerous efforts to return the earnest money to the Wanats without a response from their attorney, but the court did not permit this. In reply, the Wanats asserted the factual propositions that the Galatowitsches did not direct their broker to return the earnest money and the Wanats still had not received it, and the legal position that, having initially elected to request the earnest money, the Galatowitsches could not later amend their complaint to request actual damages. The Wanats did not address the Galatowitsches' assertion that the trial court did not permit them to present evidence on Coldwell Banker's efforts to return the earnest money to the Wanats. Since we do not have the entire record of the trial, we are unable to determine whether the trial court did this, and, if so, why. As the appellants, it is the Wanats' obligation to present us with the record necessary for the resolution of each issue they wish us to decide, and if the record is incomplete we may assume it supports the trial court's ruling. *See State v. Heft,* 178 Wis. 2d 823, 825, 505 N.W.2d 437 ( Ct. App. 1993).