Douglas Osborn and Martha Osborn,
Plaintiffs-Appellants,†

v.

Harold Dennison, Defendant-Respondent.

Court of Appeals

*No. 2007AP1799. Submitted on briefs May 2, 2008.*
*—Decided August 6, 2008.*

2008 WI App 139

(Also reported in 758 N.W.2d 491.)

† Petition to review granted.

75

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John A. Becker* of *Becker, French & DeMatthew*, Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Paul M. Selin* of *Stippich & Selin, LLC*, Bristol.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. ANDERSON, P.J.  Douglas and Martha Osborn appeal from a judgment of the circuit court holding that by not directing the return of Harold Dennison's earnest money after a failed residential real estate transaction, they irrevocably elected liquidated damages as their remedy and forfeited their right to sue for actual damages. We affirm the holding of the circuit court.

¶ 2.  On March 1, 2005, the Osborns entered into a WB-11 Residential Offer to Purchase contract to sell their house to Dennison. Dennison deposited $2000 in earnest money with the Osborns' broker, One Month Realty (OMR), and the Osborns accepted the earnest money.

¶ 3.  The original closing date was May 15, 2005. The parties executed an amendment to the purchase contract, moving the closing date to May 11, 2005, at 3 p.m. On May 11, Dennison did not show up for closing.

¶ 4.  Dennison peered in the windows of the house several hours before the scheduled May 11 closing. At

this time, he discovered that there was personal property of the Osborns still on the premises and determined that because of this he did not have to close. Dennison chose not to attend the May 11 closing.

¶ 5.   Osborn and Dennison agreed to a new closing date of May 18, 2005. On May 16, 2005, Dennison and representatives of both parties' brokers conducted a pre-closing inspection. During the closing, Dennison and the brokers discovered damp insulation and damp basement walls.[1] Dennison requested an extension on the closing date, which the Osborns rejected.

---

[1] We provide the following for background, although these facts are not relevant to our holding. Dennison apparently noticed water stains on the basement floor the first time he inspected the house in February 2005. He stated that during the offer and counteroffers, Mr. Osborn provided an explanation for the cause of the water stains, stating they were from an Aprilaire hose being knocked off and a hot water heater that had sprung a leak. Dennison said that after his offer was accepted, "the thought about the water stains and [Osborn's] explanation kind of got put in the back of my mind, and the brokers, and nobody brought it up again." He stated that a contingency for documentation of the cause of the water stains was part of the accepted offer. He said that he had forgotten all about the contingency until May 8, 2005, when he went for his walk-through before the closing scheduled on May 11, 2005. At this time he remembered and began to feel sick to his stomach and have a nagging feeling about the stains and the lack of documentation for the explanation. Dennison stated that he thought he could not cancel the closing based on the water stains because he felt he had waited too long to investigate and find out for himself whether or not the water stains were attributable to Osborn's explanation. As discussed above, Dennison went to the house a few hours before the 3 p.m. closing on May 11 and found there was personal property of the Osborns still on the premises. Dennison felt that this was a basis for him to not follow through with the closing and, therefore, did not show up for the May 11 closing.

¶ 6.   After the contract expired on May 18, 2005, Osborn said he directed his broker to put the house back on the market and to continue to hold the earnest money. Osborn said he planned to sue Dennison for the difference when he had actual damages tallied and had legal counsel in place.

¶ 7.   After being advised by letter of the Osborns' intention to sue Dennison for actual damages under the offer to purchase, Dennison's attorney sent a letter to the Osborns' attorney in May 2005 informing that Dennison intended to vigorously defend any such lawsuit and requesting return of Dennison's earnest money.

¶ 8.   Despite the request for return of the earnest money, the Osborns did not direct the return of the earnest money before or on April 28, 2006, the date on which they brought suit against Dennison for actual damages in Kenosha County Circuit Court. Thereafter, on or about June 1, 2006, Dennison filed a motion to dismiss the Osborns' lawsuit based in part on the Osborns' failure to return the earnest money before filing the suit for actual damages. In a letter dated June 23, 2006, three weeks after Dennison's motion to dismiss, almost two months after filing their suit for actual damages and, incidentally, more than a year after the failed real estate transaction between the parties, the Osborns directed their broker to return the earnest money to Dennison.

¶ 9.   The relevant default provision of the parties' agreement, contained in the initial offer to purchase, provides:

If *Buyer defaults,* Seller may:

(1)   sue for specific performance and request the earnest money as partial payment of the purchase price; or

(2)  terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) direct Broker to return the earnest money and have the option to sue for actual damages.

¶ 10.  On appeal, the Osborns argue that "[t]o sue for actual damages, it is not a requirement that the seller direct the return of the earnest money immediately upon the request of the buyer, but is a condition precedent to recovering on a claim for breach of contract." In support of this argument they contend (a) the contract does not require the return of the earnest money upon request of the buyer and the failure to do so does not constitute an election of liquidated damages; (b) under *Galatowitsch v. Wanat*, 2000 WI App 236, 239 Wis. 2d 558, 620 N.W.2d 618, the Osborns did not elect the remedy of liquidated damages and, further, even if they did, it is not an irrevocable election; and (c) the buyer cannot refuse to release the earnest money, demand its return, dispute the breach of contract claim and then limit the seller's damages to the earnest money. A resolution of the proper construction of contract language presents a question of law, which we review de novo. *See id.,* ¶ 11.

¶ 11.  The Osborns' argument fails. Though our review is de novo, we appreciate the well-reasoned decision of the trial court and draw largely from it for our discussion. The plain language of the buyer-default provision forecloses the Osborns' interpretation, i.e., that directing the return of the earnest money is a condition precedent to recovering on a claim for breach of contract and not a condition precedent to sue for actual damages. The language of the buyer-default provision provides the seller options:  the seller may

79

elect one option "or" may elect another. Under this provision, the seller needs to first direct the broker to return the earnest money to the buyer in order to have the option to sue for actual damages. Contrary to the Osborns' interpretation, the buyer-default provision of the contract does not have any bearing on whether the seller may recover on a claim; rather, the purpose of the provision is to set forth the separate and distinct remedies that are available to a seller in the event of a buyer default.

¶ 12.   Our plain language interpretation of this clause is supported by *Galatowitsch*. The case at bar is the mirror image of *Galatowitsch* and, although many of the facts are distinguishable from the present case, the rationale and holding of *Galatowitsch* apply to the present case. There, as here, the seller, Galatowitsch, executed a form WB-11 Residential Offer to Purchase with the buyer, the Wanats, and the Wanats failed to close the transaction. *Id.*, ¶¶ 3–4. The relevant buyer-default language was identical to the language in the contract at bar. *Id.*, ¶ 10. Following the alleged breach by the Wanats and prior to the commencement of any lawsuits in the matter, the Galatowitsches requested the earnest money as liquidated damages, but did not receive it. *Id.*, ¶ 4. On November 16, 1998, the Galatowitsches sued the Wanats for liquidated damages in the amount of the earnest money. *Id.* Approximately one month later, the Galatowitsches filed an amended complaint and changed their lawsuit from a demand for liquidated damages to a demand for actual damages. *Id.*, ¶ 5. Importantly, the amended complaint contained the Galatowitsches statement that, on the date they filed the amended complaint, they directed their broker, Coldwell Banker, to return the earnest money to the Wanats. *Id.*

¶ 13. Relying on the undisputed fact that the Galatowitsches had directed the broker to return the earnest money before filing their amended complaint, we held that the Galatowitsches were allowed to amend their complaint from a demand for liquidated damages to a demand for actual damages. *Id.*, ¶ 23. We explained that "under the buyer-default provision a condition of suing for actual damages is that the seller direct the broker to return the earnest money to the buyer." *Id.* We also made clear that the remedies of liquidated damages and actual damages are *alternate* remedies. *Id.*, ¶ 22.

¶ 14. In *Galatowitsch*, we discussed the construction of a similar buyer-default provision in *Zimmerman v. Thompson*, 16 Wis. 2d 74, 114 N.W.2d 116 (1962). Though we noted that the language of the provision in *Zimmerman* differed, we found *Zimmerman* nonetheless helpful.

> [Zimmerman] explains the purpose of allowing the seller to elect the earnest money as liquidated damages is to allow the seller a remedy "without further fuss or bother." And it also tells us something a seller may *not* do: both retain the earnest money as liquidated damages "without the fuss or bother" of a lawsuit *and* bring a suit for additional damages.

*Galatowitsch*, 239 Wis. 2d 558, ¶ 14.

¶ 15. Despite this foreclosure to suing for actual damages once liquidated damages are elected, the Osborns attempt to use *Galatowitsch* in support of their position. They point to the following language in *Galatowitsch*: "We conclude that a seller's request for the earnest money as liquidated damages under option (a) does not foreclose the exercise of option (b) if the seller does not receive the earnest money." *Id.*, ¶ 19. The Osborns argued to the trial court, and again here,

81

that their situation is the "same thing" as *Galatowitsch* and, therefore, they, like the Galatowitsches, should not be foreclosed from suing for actual damages.

¶ 16.   The trial court disagreed and explained that the Osborns' actions were not the same as the Galatowitsches because, unlike the Galatowitsches, the Osborns *did not request* the earnest money as liquidated damages before they sued for actual damages. Instead, they directed their broker to hold the earnest money with the intention of also suing for actual damages and, once held, the Osborns did in fact initiate suit.

¶ 17.   The Osborns did not convince the trial court and they do not convince this court that directing their broker to hold the earnest money with the stated intention of also suing for actual damages, then suing for actual damages while continuing to hold the earnest money is the same as making a request to the buyer for the earnest money as liquidated damages. No such request was made and no such request was refused—this is not *Galatowitsch* in that sense. And, thus, given the Osborns' actions, the option to elect the remedy of actual damages was not available to the Osborns, as it was to the Galatowitsches.

¶ 18.   We therefore agree with the trial court that when the Osborns brought the suit for actual damages, without first directing a return of the earnest money, they not only elected the remedy of liquidated damages, they limited themselves to it.

¶ 19.   Our ruling today abides by the teaching in *Galatowitsch*. A seller bound by this type of contract language may *not* both retain the earnest money as liquidated damages and bring a suit for actual damages. This proscribed action is exactly what the Osborns attempted to do. It bears repeating that it was only after Dennison responded to the Osborns' April 28,

2006 suit for actual damages with a motion to dismiss that the Osborns first directed the return of Dennison's earnest money, and this was not even done until three weeks after Dennison's motion to dismiss. This was too late.

*By the Court.*—Judgment affirmed.