Martha OSBORN and Douglas Osborn,†
Plaintiffs-Appellants-Petitioners,

v.

Harold DENNISON,
Defendant-Respondent.

Supreme Court

*No. 2007AP1799. Oral argument April 22, 2009.
—Decided July 9, 2009.*

2009 WI 72

(Also reported in 768 N.W.2d 20.)

† Motion for reconsideration denied 11/2/09.

For the plaintiffs-appellants-petitioners there were briefs by *John A. Becker* and *Becker, French & DeMatthew,* Racine, and oral argument by *John A. Becker.*

For the defendant-respondent there was a brief by *Harold C. Dennison* and oral argument by *Harold C. Dennison.*

An amicus curiae brief was filed by *Debra P. Conrad,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Osborn v. Dennison,* 2008 WI App 139, 314 Wis. 2d 75, 758 N.W.2d 491, affirming the judgment of the Kenosha County Circuit Court, Barbara A. Kluka, Judge. The case requires interpretation of the now-mandatory WB-11 Residential Offer to Purchase form approved for residential real estate transactions by the Wisconsin De-

partment of Regulation and Licensing. *See* Wis. Admin. Code § RL 16.03 (Note) (Oct. 2008).

¶ 2. The issue presented may be stated as follows:

Does the seller in a failed real estate transaction lose the right to sue the defaulting buyer for actual damages if the seller fails to direct the seller's broker to return the defaulting buyer's earnest money prior to the date the seller sues the defaulting buyer for actual damages?

¶ 3. We conclude that the Default provision in the Residential Offer to Purchase form gives the seller two separate options to seek damages in the wake of the buyer's default. The seller has the option to seek either liquidated damages or actual damages, but not both. If a seller seeks actual damages, the seller must direct the broker holding the buyer's earnest money to return the money to the buyer before or at the same time suit is filed for actual damages. When seeking actual damages, the seller must be able to plead that the seller has directed the return of the earnest money to the buyer. The seller may not tie up the buyer's earnest money while the seller is seeking actual damages. According to the terms of the Residential Offer to Purchase, the seller's failure to direct return of the buyer's earnest money prior to or at the same time suit is filed for actual damages forecloses the seller's option to seek actual damages for the alleged breach. Consequently, we affirm the decision of the court of appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 4. The facts in this case are not disputed. The issue presented lurks in almost every residential real estate transaction in Wisconsin.

¶ 5. On March 1, 2005, Douglas and Martha Osborn (the Osborns) accepted Harold Dennison's (Den-

nison) offer to purchase their home at 1726 34th Avenue in Kenosha. Dennison's initial offer was made on a standard form, WB-11 Residential Offer to Purchase. This offer was amended by a counter offer, using another standard form (WB-44 Counter Offer) that incorporated by reference the basic "terms and conditions" in the original Offer to Purchase, and it was revised again by other amendments on standard forms.

¶ 6. The parties agreed to a final purchase price of $482,500 and an original closing date of no later than May 15, 2005. The purchase offer was contingent upon the home being appraised for the purchase price and the successful closing of an unrelated commercial property in a transaction then pending. The offer also called for the Osborns to provide Dennison "with documentation that the cause of the water stain on the floor in the basement ha[d] been rectified" within ten days of the offer's acceptance. In addition, the parties agreed that Dennison would deposit $2,000 of earnest money with the Osborns' broker, One Month Realty.

¶ 7. The purchase offer included a buyer-default clause that set forth the seller's options if the buyer defaulted on the offer. The language reads as follows:

> If *Buyer defaults,* Seller may:
>
> (1) sue for specific performance and request the earnest money as partial payment of the purchase price; or
>
> (2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) direct Broker to return the earnest money and have the option to sue for actual damages.

¶ 8. On April 29, 2005, the parties agreed to a firm closing date of May 11. However, on May 11,

several hours prior to the closing, Dennison went to the home and discovered that the Osborns had left several pieces of personal property, including a large boat, on the premises. Dennison decided not to go to the scheduled closing because the Osborns did not have the residence free of their personal property and all debris upon closing, as the purchase offer required. Following the failed closing, the Osborns and Dennison negotiated a new closing date of May 18, 2005.

¶ 9. On May 16, 2005, in accordance with the purchase offer and with the Osborns' authorization, Dennison went to the property with representatives from his real estate firm and a representative from the Osborns' real estate firm to conduct a final, pre-closing inspection. Dennison alleges that he discovered wet insulation and water on the basement walls during the inspection. Following the inspection and prior to the May 18 closing date, Dennison and the Osborns attempted to negotiate an amended purchase offer. However, these negotiations failed, and the sale never closed.

¶ 10. Douglas Osborn stated that he decided "[s]ometime in May"—after the transaction did not close—that he was going to file suit against Dennison for his failure to execute the purchase offer. This was confirmed by the Osborns' attorney in a letter to Dennison dated May 23, 2005, which stated that the Osborns were going to sue Dennison for their alleged actual damages under the purchase offer. Douglas Osborn later testified as follows:

> [On or around May 25, 2005,] I directed the real estate agent to put the house back on the market, and continue to hold the [earnest] money, and when I had actual damages and I had them tallied up, and I had

legal counsel in place, then I was going to sue Mr. Dennison for the difference.

¶ 11. In response to the Osborns' threat to sue, Dennison had a letter prepared and sent to the Osborns. The May 25 letter stated the following:

Please be advised that [Dennison] intends to vigorously defend any such lawsuit, and upon receipt of the earnest money, [Dennison] reserves [his] rights under the [purchase o]ffer to sue [the Osborns] for actual damages caused by [the Osborns'] defaults, including seeking any and all remedies available in law or equity, including attorney's fees and costs.

¶ 12. Dennison's letter included an express request that the earnest money be returned: "Please forward the earnest money at your earliest convenience to Buyer as directed in the Offer."[1]

¶ 13. In October 2005, the Osborns sold the home at 1726 34th Avenue to a third-party purchaser for $42,500 less than Dennison's offer to purchase. At that time, the Osborns continued to have their broker hold Dennison's earnest money in escrow.

---

[1] According to the purchase offer, the broker holding the earnest money was permitted to release the earnest money only under the following conditions:

If negotiations do not result in an accepted offer, the earnest money shall be promptly disbursed . . . to the person(s) who paid the earnest money. . . . If [the transaction] does not close, the earnest money shall be disbursed according to a written disbursement agreement signed by all [p]arties to [the offer]. . . . If said disbursement agreement has not been delivered to [the] broker within 60 days after the date set for closing, [the] broker may disburse the earnest money: (1) as directed by an attorney who has reviewed the transaction and does not represent [the b]uyer or [s]eller; (2) into a court hearing a lawsuit involving the earnest money and all [p]arties to [the o]ffer; (3) as directed by court order; or (4) any other disbursement required or allowed by law.

¶ 14. Approximately six months later, on April 28, 2006, the Osborns filed suit against Dennison in Kenosha County Circuit Court, alleging a breach of contract and demanding "compensatory damages."

¶ 15. Dennison responded on June 5, moving the circuit court to dismiss the breach of contract claim. He argued that the Osborns' claim for compensatory damages should be dismissed for failing to state a claim "because the Osborns elected the remedy of liquidated damages" by filing suit for compensatory damages without first directing return of the earnest money to Dennison as was required by the purchase offer.[2] In addition, Dennison filed a June 8 answer to the complaint, denying that he breached the purchase offer and arguing "[t]hat return of the earnest money was a condition precedent to filing an action for damages." Because the Osborns did not return the earnest money before filing suit, Dennison argued, they "failed to abide by the terms of the contract." Instead, he asserted, they "have elected a remedy of liquidated damages," and their claim should be dismissed with prejudice.

¶ 16. On June 23, 2006, the Osborns directed their broker to return the earnest money to Dennison. Dennison apparently refused to accept the money.

¶ 17. On June 30, the Osborns filed a memorandum in opposition to Dennison's motion to dismiss, arguing that their complaint stated a claim for breach of contract, "[p]lain and simple." Moreover, the Osborns contended that Dennison's motion should be treated as one for summary judgment, considering that Dennison submitted an affidavit, which is "not appropriate when bringing a motion to dismiss based on failure to state a

---

[2] Dennison also filed an affidavit in support of his motion in which he denied liability for breach of contract.

claim." Ultimately, the Osborns concluded that Dennison's motion for dismissal should be denied.

¶ 18. At the motion hearing, on July 5, 2006, Kenosha County Circuit Judge Wilbur W. Warren heard arguments from both parties. Counsel for Dennison made the following statements:

> It's our position that by failing to direct that the earnest money be returned to our clients before filing this lawsuit, the Osborns have . . . elected a remedy and are not now, after the fact, able to sue for damages and then direct that the earnest money be returned.
>
> . . . .
>
> The *Galatowitsch*[ *v. Wanat,* 2000 WI App 236, 239 Wis. 2d 558, 620 N.W.2d 618,] case is clear that you can't have it both ways. You can't have both liquidated damages and . . . sue for actual damages. But it goes a little further than that. On two occasions in that opinion, the [c]ourt states that before you can sue for actual damages, you have to direct that that earnest money be returned . . . .
>
> . . . .
>
> Now there's been a complaint in the [m]emorandum [in opposition to the motion to dismiss] that this is not really a motion to dismiss. . . . It may be treated as a motion for summary judgment. I think either way that the [c]ourt treats this motion, whether it is for a motion to dismiss . . . or a motion for summary judgment, the fact . . . is the earnest money was not returned, nor was it directed to be returned to my client[] until well after this lawsuit was started. And due to that, they cannot now sue for actual damages.
>
> The reason that I think it's still appropriate to treat this as a motion to dismiss is because under the

*Galatowitsch* case, it's a condition precedent to filing an action for actual damages to direct return of the earnest money.

. . . .

Keep in mind, of course, we're not admitting or . . . conceding any default on our part. In fact, if we have to go to trial, we certainly will vigorously defend this. It wasn't a default on our part. But for purposes of this motion, they can keep the earnest money. That's what they elected to do. The lawsuit for actual damages ought to be dismissed.

¶ 19. In response, counsel for the Osborns reiterated that Dennison's motion was not a motion for dismissal because he submitted affidavits with his motion. According to the Osborns' counsel, affidavits cannot be considered on a motion to dismiss. If they are considered, counsel argued, the motion must be analyzed as a motion for summary judgment. The Osborns' counsel summarized his arguments regarding the substantive issue as well:

Just like in *Galatowitsch,* [the Osborns] initially sued for the $2,000 for the liquidated damages.[3] And then after, later, they amended the complaint and directed the return of the money. So that's after. After we got their [m]emorandum [in support of the motion to dismiss], we made it clear. We had Mr. Osborn authorize the release of the money. He's done that. I don't know. My understanding is it has not been accepted.

But the *Galatowitsch* case says that [the seller] has to get the money, the $2,000, and accept it as liquidated

---

[3] This statement is premised on counsel's argument that the complaint asks for "compensatory damages," which he claims could be either liquidated damages or actual damages. We address this argument in ¶ 51, *infra.*

damages, and that's never been done here. It's never been alleged by the defendant here. So I guess I'm kind of puzzled as to what the issues are. I mean, there's a claim for breach of contract.

¶ 20. In making his decision, Judge Warren focused on the standard related to a motion to dismiss and stated that the complaint "alleges existence of a contract, it alleges a breach of that contract, and it alleges damages under the notice pleadings." Therefore, Judge Warren decided that the motion to dismiss was "not supported . . . based upon what the four corners of the complaint say because [the complaint] does state a cause of action for breach of contract." He added that on a motion for summary judgment, Dennison might very well prevail.

¶ 21. Following Judge Warren's rejection of Dennison's motion to dismiss, the case was reassigned by judicial transfer to Judge Barbara A. Kluka.

¶ 22. On October 2, 2006, the Osborns supplemented their original complaint by including a sentence stating that the Osborns "authorized the release of the earnest money to Mr. Dennison."

¶ 23. In early March 2007, both parties filed separate motions for summary judgment. On March 6, the Osborns filed a motion for partial summary judgment. They argued that Dennison failed to complete the transaction in May 2005 as required by the purchase offer which constituted a breach of contract. Three days later, Dennison filed a motion for summary judgment, arguing that, even if he breached the contract,[4] the

[4] Dennison denied the breach of contract in response to the Osborns' motion for summary judgment, claiming that his failure to execute the contract was excused for several reasons: (1) the property was not ready for immediate occupancy; (2) the

Osborns were limited to the earnest money as liquidated damages and they had no right to sue for actual damages.[5]

¶ 24. On April 5, 2007, Judge Kluka decided both motions for summary judgment. She stated that Dennison's position with respect to liquidated damages was correct. She began by noting that "the purchase contract . . . says the seller may upon default or breach sue for specific performance and request the earnest money as partial payment of the purchase price." That, she said, did not happen. She stated the purchase contract then provides that the seller may "terminate the offer and have the option to request the earnest money as liquidated damages." The third option, Judge Kluka continued, is to "direct the broker to return the earnest money and have the option to sue for actual damages."

¶ 25. The court noted that none of these things happened in the way the purchase contract contemplated. Judge Kluka stated that the buyer, Dennison, asked "for the earnest money, and the seller[, the Osborns,] denied that request or instructed the broker to hold on to [the earnest money], which I think is significant." The Osborns, the court said, "sought actual damages because they filed th[is] lawsuit."

> [W]hen the motion to dismiss was filed they . . . directed the broker to return the earnest money on June

---

Osborns failed to provide Dennison with the documentation explaining the water issues in the basement; and (3) Dennison discovered more water problems during his pre-closing inspection of the property.

[5] Dennison's arguments related to his motion for summary judgment are ultimately the same arguments he made in relation to his motion to dismiss.

23rd of 2006. So, I think they exercised the option to retain that earnest money when they denied sending the earnest money to the buyer. The buyer requested it back, and they directed the broker to hold it until the property was sold and then would sue for actual damages; and I don't think that's an option that they had under the terms of their contract.

. . . .

. . . [Directing the return of the earnest money is] a condition precedent for suing for actual damages. It doesn't dismiss the lawsuit. It limits the remedy [to liquidated damages].

¶ 26. In addition, Judge Kluka denied the Osborns' summary judgment motion on breach because there were "lingering issues" of material fact that remained unresolved. Specifically, the circuit court noted there were unresolved facts that were material to whether Dennison's failure to close the transaction was excusable, as a matter of law, according to the purchase offer.

¶ 27. On April 19, 2007, Judge Kluka denied the Osborns' motion for reconsideration, and at the request of the Osborns' counsel, she took time to clarify her ruling from April 5. Specifically, the Osborns' counsel wanted to know whether Judge Kluka dismissed their claim for actual damages with or without prejudice. The following exchange then took place:

THE COURT: . . . [I]f there is not a closing, the seller has some elections to make. One of which is to retain the earnest money. The other of which basically is to return the earnest money and sue for actual damages.

Based on my ruling and findings in the hearing on the motion for summary judgment, I have concluded

that the first option is what the plaintiffs are limited to now given the way the events in this case unfolded. That is, they may retain their earnest money; and therefore, I will order that the dismissal be with prejudice.

. . . .

[OSBORNS' COUNSEL]: . . . [I]f the court's ruling is that he's entitled to the earnest money because the sale did not take place, then my understanding would be that based upon the undisputed facts that my client is entitled to $2,000.

So, in terms of dismissing this at this point, the judgment would be for my client for $2,000 and a dismissal with prejudice.

¶ 28. On June 11, 2007, Judge Kluka entered an order for judgment reflecting her on-the-record decision. The order required that the $2,000 in earnest money, plus costs, be paid to the Osborns as liquidated damages, and the matter was "dismissed with prejudice."[6]

¶ 29. The court of appeals unanimously affirmed the circuit court's decision on August 6, 2008. *See Osborn,* 314 Wis. 2d 75. On appeal, the Osborns argued that, "[t]o sue for actual damages, it is not a require-ment that the seller direct the return of the earnest money immediately upon the request of the buyer, but [it] is a condition precedent to recovering on a claim for

---

[6] The Osborns' counsel proposed a bill of costs equaling $1,839.25, bringing the total judgment against Dennison to $3,839.25. Dennison satisfied this judgment and the money is being held in trust by the Osborns' counsel. This judgment was satisfied with funds separate from the earnest money Dennison previously deposited.

breach of contract." *Id.*, ¶ 10 (internal quotations omitted) (alteration in original). They argued that the purchase offer "does not require the return of the earnest money upon request of the buyer and the failure to do so does not constitute an election of liquidated damages." *Id.* The Osborns assert that, even if they did elect the remedy of liquidated damages, under *Galatowitsch,* the election is not irrevocable. *Id.*

¶ 30. The court of appeals interpreted the plain language of the purchase offer and determined that "*the buyer-default provision forecloses the Osborns' interpretation,* i.e., that directing the return of the earnest money is a condition precedent to recovering on a claim for breach of contract and not a condition precedent to sue for actual damages." *Id.*, ¶ 11 (emphasis added). The court stated bluntly, "[T]he seller needs to first direct the broker to return the earnest money to the buyer in order to have the option to sue for actual damages." *Id.*

¶ 31. The court of appeals also distinguished *Galatowitsch* from the Osborns' situation by pointing out that the seller in *Galatowitsch* first requested the earnest money as liquidated damages and sued only after the buyer refused to release the earnest money. *See id.,* ¶¶ 15–17. Because "the Osborns did not request the earnest money as liquidated damages before they sued for actual damages . . . the option to elect the remedy of actual damages was not available to the Osborns, as it was to the Galatowitsches." *Id.*, ¶¶ 16–17.

¶ 32. The Osborns petitioned this court for review, which we granted on December 16, 2008.

## II. Standard of Review

¶ 33. The resolution of this case depends on the interpretation of the purchase offer. The purchase offer

is a contract, the interpretation of which is a question of law that we review de novo. *See Zimmermann v. Thompson*, 16 Wis. 2d 74, 76, 114 N.W.2d 116 (1962); *see also Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶ 12, 261 Wis. 2d 70, 661 N.W.2d 776 (stating that the interpretation of a written agreement between two parties is a question of law that is reviewed de novo).

## III. Discussion

¶ 34. This case requires the court to interpret the Default provision in the standard, mandatory Wisconsin Residential Offer to Purchase form. The Default provision reads in its entirety:

> Default. Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and conditions of this Offer. A material failure to perform any obligation under this Offer is a default which may subject the defaulting party to liability for damages or other legal remedies.
>
> If *Buyer defaults,* Seller may:
>
> (1) sue for specific performance and request the earnest money as partial payment of the purchase price; or
>
> (2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) direct Broker to return the earnest money and have the option to sue for actual damages.
>
> If *Seller defaults,* Buyer may:
>
> (1) sue for specific performance; or (2) terminate the Offer and request the return of the earnest money, sue for actual damages, or both.

¶ 35. This case involves an alleged breach by the buyer. Consequently, the ball is in the seller's court. The seller did not choose to sue for specific performance of the offer. As a result, the focus is on the two options for damages after the seller terminates the offer.

¶ 36. The first option is to "request the earnest money as liquidated damages." Here, the sellers did not "request" the earnest money as liquidated damages from the buyer. Instead, they denied the buyer's request to return the money by directing their broker to hold the money for future disbursement.

¶ 37. The second option is to direct the broker "to return the earnest money and have the option to sue for actual damages."[7] Here, the sellers sued for actual damages after directing their broker to hold the earnest money. In effect, they directed their broker *not* to return the money to the buyer. In other words, the sellers tried to obtain the best of both options without faithfully following either one. This was plainly contrary to the Residential Offer to Purchase and contrary to the principles established in *Zimmermann*.

¶ 38. *Zimmermann* dealt with a similar, although not identical, offer to purchase. The contract provided the seller certain options in case the buyer defaulted.[8]

---

[7] This limited option should be compared with one of the buyer's options in the face of a default by the seller: "Buyer may . . . terminate the Offer and request the return of the earnest money, sue for actual damages, *or both*." (Emphasis added.)

[8] The provision at issue in *Zimmermann v. Thompson*, 16 Wis. 2d 74, 75, 114 N.W.2d 116 (1962), read as follows: " 'Should the undersigned buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the seller, be forfeited as liquidated damages and shall be paid to or retained by the seller . . . .' "

731

After discussing the terms of the contract, the court made the following observations about the default provision of the contract:

> This gives the seller an option to take liquidated damages or to take whatever actual damages he can prove, but *it does not give him the right to both*. If he chooses liquidated damages he may retain the down payment [earnest money] without further fuss or bother. If he chooses actual damages the contract gives him no additional present, simultaneous, right to retain the down payment. [Here, he] has retained it and is now trying to expand the limited right of retention into a right to keep the money and apply it on whatever larger damages he can establish. The contract does not so provide.

*Id.* at 76–77 (emphasis added).

¶ 39. The principles in *Zimmermann* were affirmed and insightfully explained by Judge Vergeront in *Galatowitsch*, where the buyer-default provision was identical to the one at issue here:

> [W]hen the buyer breaches and the seller receives the earnest money as liquidated damages, the seller benefits by having a speedy and inexpensive means to recover some damages, although perhaps not all. The buyer also benefits by not having to defend an action in court with the exposure of greater damages.

*Galatowitsch,* 239 Wis. 2d 558, ¶ 16.

¶ 40. Judge Vergeront added the following:

> [I]f the seller requests the earnest money as liquidated damages for a breach but does not receive it, the seller must expend the time and money to file a lawsuit. . . .
>
> . . . .
>
> . . . The seller may request the earnest money as

liquidated damages without the risk of having to file a suit in which the seller cannot recover all damages even if the seller proves a breach. Upon the seller's request, the buyer has the opportunity to evaluate the strength of the seller's claim of breach, the likely amount of damages and their susceptibility of proof, and to either agree or disagree to the disbursement of the earnest money as liquidated damages. If the buyer agrees, the dispute is resolved. If the buyer disagrees, the buyer understands he or she may have to defend a suit for breach of the agreement and may have to pay actual damages; however, *the seller must direct the return of the earnest money to the buyer before seeking actual damages.*

*Id.*, ¶¶ 16, 18 (emphasis added).

¶ 41. The court explicated these dynamics in a case in which a residential real estate transaction failed when the buyers were unable to follow through on their offer to purchase. *Id.*, ¶¶ 3–4. Upon this default, the sellers requested the $2,000 of earnest money, meaning they requested the buyers to authorize the broker to release the $2,000 to the sellers and end the matter without "fuss or bother." *Id.*, ¶ 4; *see also Zimmermann,* 16 Wis. 2d at 76. The buyers did not release the money. *Galatowitsch,* 239 Wis. 2d 558, ¶ 4. As a result, the sellers filed suit to obtain the $2,000, plus interest and costs. Id. In short, they filed suit to obtain *only* the earnest money—*only* the "liquidated damages"—and they did not direct their broker to release the earnest money to the buyers because they were not seeking more.

¶ 42. Thereafter, the sellers sold their home to other buyers for less money than the Wanats' original offer. *Id.*, ¶ 5. This prompted the sellers to amend their complaint to seek actual damages. *Id.* They simultaneously directed their broker to release the earnest

money to the buyers. *Id.* The buyers insisted that a suit for actual damages was impermissible under these circumstances because the sellers had previously elected the option of liquidated damages. *Id.*, ¶ 9. The courts disagreed. As the court of appeals put it: "We conclude that a seller's request for the earnest money as liquidated damages under option (a) does not foreclose the exercise of option (b) *if the seller does not receive the earnest money.*" *Id.*, ¶ 19 (emphasis added).

¶ 43. The court said this construction of the contract was more consistent with the purpose of liquidated damages and would more likely lead to the settlement of more disputes in the context of this type of transaction than the buyer's interpretation. *Id.*

¶ 44. Here, the sellers (the Osborns) try to utilize certain facts and phrases in the *Galatowitsch* opinion, such as the emphasized phrase in ¶ 42, *supra,* to support their position. They contend that option (2)(b) does not require the seller to direct return of the earnest money before suing for actual damages because (2)(b) does not expressly state that the earnest money must be directed for return "prior to," "first," or "before" the seller has the option to sue. Instead, they argue, the provision uses the word "and" which does not connote the order in which events must occur. They claim that directing return of the earnest money is a condition precedent to *recovery* of actual damages rather than a condition precedent to filing suit for actual damages.

¶ 45. Furthermore, the Osborns argue that, under *Galatowitsch,* "the failure to authorize the return of the earnest money does not constitute an election of remedies." Instead, the Osborns assert, "[i]t is the actual receipt and retention of the earnest money that potentially triggers the election of liquidated damages." Therefore, the Osborns conclude that, because they did

not actually receive the earnest money, they should not be precluded from seeking actual damages by way of a supplemented complaint.

¶ 46. Ultimately, the Osborns claim to be confused as to how they ended up with an order for judgment for the $2,000 in earnest money when they filed a claim for actual damages.

¶ 47. In response, Dennison contends that the plain language of the purchase offer requires the Osborns to direct return of the earnest money prior to instituting a suit against him for actual damages. He also asserts that such a construction is consistent with the court of appeals' opinion in *Galatowitsch*, because that case states that the seller must direct the broker to return the earnest money on or before the date the seller files suit for actual damages. He claims the difference between *Galatowitsch* and this case is that the sellers in *Galatowitsch* abided by the buyer-default provision throughout the entire transaction, whereas the Osborns violated that provision when they filed suit for actual damages without directing that the earnest money be returned.

¶ 48. We agree with Dennison. The overriding principle in this commonplace consumer transaction is that, when the buyer defaults and the seller wants damages (not specific performance), the seller has the *option* to seek either liquidated damages or actual damages, but not both. *Galatowitsch*, 239 Wis. 2d 558, ¶ 18; *Zimmermann*, 16 Wis. 2d at 76. Thus, if the buyer defaults, the seller may terminate the offer and "request the earnest money as liquidated damages." Under option (a), the seller need not release the earnest money to the buyer because the seller is requesting the buyer to release the money to the seller and thereby end the

735

dispute. If the buyer does not agree to release the money, the seller may sue for the earnest money alone and be assured that the money will remain in escrow where it will be available to the seller if and when breach is established. A seller may have no actual damages and still be entitled to liquidated damages because the buyer breached the offer to purchase.

¶ 49. Under option (b), the seller may seek actual damages, but the seller may not tie up the buyer's earnest money while the seller is seeking actual damages. *Galatowitsch,* 239 Wis. 2d 558, ¶ 18. Rather, the seller must direct the broker holding the earnest money to return it to the buyer. *Id.* The seller must direct the release of the money before or at the same time as filing suit for actual damages. *Id.; see also Zimmermann,* 16 Wis. 2d at 76. In filing suit for actual damages, the seller must be able to plead that the seller has directed the return of the earnest money to the buyer. If the seller is unable to plead this condition precedent, the seller has limited himself to seeking the earnest money as liquidated damages. By his own action, the seller has foreclosed the other remedy.

¶ 50. If we were to accept the Osborns' theory that a seller may hold the earnest money until some point after the seller files suit for actual damages, we would cause uncertainty as to how long this advantage could continue, we would create imbalance between the parties, and we would undermine the purpose of the default provision of the Residential Offer to Purchase. We agree with the Osborns that the buyer cannot, merely by demanding the return of the earnest money, force the seller into making a decision on whether to pursue a claim for actual damages or take the earnest money as liquidated damages. The buyers' request for return of the earnest money is inconsequential to the

seller's decision. What matters is whether the seller directs the earnest money to be returned before or at the same time he files a lawsuit seeking actual damages. *See Galatowitsch*, 239 Wis. 2d 558, ¶ 18 ("[T]he seller must direct the return of the earnest money to the buyer before seeking actual damages."). If he does not, then he has no right to sue for actual damages under the purchase offer. The problem for the Osborns is that they did, in fact, file suit for actual damages prior to directing return of the earnest money.

¶ 51. The Osborns try one additional gambit to get around this determination. They assert that, in their initial complaint, they sought "compensatory damages," which they say could be either liquidated damages or actual damages. We are not convinced. In our view, a claim for compensatory damages was undeniably a claim for actual damages under the language of the purchase offer. First, the record before us is quite clear that liquidated damages were never seriously contemplated by the Osborns. For example, within a couple days of the failed transaction, the Osborns sent Dennison a letter threatening to sue him for actual damages. Moreover, the Osborns never requested that Dennison authorize the release of the earnest money so they could take it as liquidated damages. Finally, *Black's Law Dictionary* 395 (7th ed. 1999) states that liquidated damages are "contractually stipulated as a *reasonable estimation of actual damages* to be recovered by one party if the other party breaches." (Emphasis added.) On the other hand, compensatory damages are considered synonymous with actual damages. *Black's, supra,* at 394.

¶ 52. Because the Osborns' suit for actual damages was filed almost two months prior to the time the Osborns directed their broker to return the earnest

money, their suit for actual damages is not allowed. Supplementing the complaint does not cure the defect that the Osborns' suit was filed for actual damages before the earnest money was directed to be returned. Therefore, the complaint filed by the Osborns is inconsistent with the options set out in the purchase offer. The language of the purchase offer controls, and the purchase offer does not provide authority for a suit for actual damages unless the seller directs return of the earnest money on or before the date the suit is filed.

## IV. Conclusion

¶ 53. We conclude that the Default provision in the Residential Offer to Purchase form gives the seller two separate options to seek damages in the wake of the buyer's default. The seller has the option to seek either liquidated damages or actual damages, but not both. If a seller seeks actual damages, the seller must direct the broker holding the buyer's earnest money to return the money to the buyer before or at the same time suit is filed for actual damages. When seeking actual damages, the seller must be able to plead that the seller has directed the return of the earnest money to the buyer. The seller may not tie up the buyer's earnest money while the seller is seeking actual damages. According to the terms of the Residential Offer to Purchase, the seller's failure to direct return of the buyer's earnest money prior to or at the same time suit is filed for actual damages forecloses the seller's option to seek actual damages for the alleged breach. Consequently, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.