38 P.3d 1258

OPPORTUNITY, L.L.C., an Idaho limited liability company, Plaintiff–Appellant,

v.

Fred OSSEWARDE and Joanne Ossewarde, husband and wife, Defendants–Respondents.

Fred Ossewarde and Joanne Ossewarde, husband and wife, Counterplaintiffs,

v.

Edward Stocklen, Counterdefendant.

No. 25519.

Supreme Court of Idaho, Cd'A, October 2001, Term.

Jan. 4, 2002.

Edward W. Kok, Coeur d'Alene, for appellant.

Harvey Richman, Coeur d'Alene; Stephen B. McCrea, Coeur d'Alene, for respondents. Harvey Richman argued.

TROUT, Chief Justice.

Appellants Opportunity L.L.C. (Opportunity) and Edward Stocklen (Stocklen) appeal the district court's ruling at the conclusion of a court trial that Opportunity was liable to Respondents Fred and Joanne Ossewarde (Ossewardes) in the amount of $425,000 plus costs and interest.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In August 1995, Ossewardes, through their agent, William Stark (Stark) entered into a purchase agreement with Opportunity whereby Opportunity would purchase from Ossewardes forty-five lots of real property in the Blackwell Subdivision, Kootenai County,

Idaho for $909,750.00. A promissory note was executed obligating Opportunity to make specified payments to Ossewardes at certain times, beginning on December 31, 1995. Ossewardes were apparently[1] obligated to complete the infrastructure on the premises in order for it to be accepted by the City of Spirit Lake (City). Three days after signing the agreements, Stark sent a letter, which he signed in his individual capacity, dated August 7, 1995, to Stocklen showing a breakdown of the purchase price of each individual lot. Opportunity began to market the property for resale of the individual lots and applied for building permits, which were denied by the City.

On October 3, 1995, prior to closing, the purchase agreement, promissory note, and deed of trust were amended to allow Opportunity additional time to make payments, the first payment of $400,000 being due on September 30, 1996. It also increased the purchase price to $950,000. The amended promissory note contained a clause setting forth an amended payment schedule and providing that payment for partial reconveyances shall remain due so long as the property was available for conveyance, but if it was not, no sums would be due. The amended promissory note also contained a clause obligating Stocklen, the managing member of Opportunity, to assume personal responsibility for the debt in the event that Opportunity was adjudged unable to make the required payments.

In February 1996, Ed Loshbaugh & Sons (Loshbaugh) filed a lien for $121,000.00 against Ossewardes, which was recorded on the property in question. Opportunity wrote a letter dated February 27, 1996, to Ossewardes notifying them of the lien and inquiring how the problem could be remedied. Ossewardes responded in a letter dated February 29, 1996, that they were working diligently to address the lien and asked Opportunity to provide specific notice of delayed sales or construction resulting from the lien so that they could remove the lien through bonding of individual lots. Opportunity did not respond and on August 7, 1996, the lien was removed. Opportunity did not lose any sales due to the lien, but rather struggled to make any sales of the lots, probably because of market factors.

On August 29, 1996, Opportunity filed a complaint in the district court seeking rescission of the contract, or in the alternative, damages. Opportunity failed to make any payment on the property, and on December 4, 1996, Ossewardes recorded a notice of default under the terms of the Deed of Trust. On January 13, 1997, Opportunity filed an amended complaint against Ossewardes, which included an additional claim for mutual mistake. On March 6, 1997, Ossewardes answered Opportunity's amended complaint and counterclaimed against Opportunity for a deficiency judgment for any deficiency that might result from a trustee's sale. On May 12, 1997, Ossewardes sold the property at a trustee's sale for a credit bid of $225,000.

On May 21, 1997, Ossewardes also filed a complaint against Stocklen with respect to his guarantee contained in the amended promissory note, which the district judge allowed over Opportunity's objection. On August 13, 1997, Stocklen answered averring that he was not liable because Opportunity had not been adjudged liable and unable to pay as required by the guarantee. He further argued impossibility, mutual mistake, joint venture, and violation of the implied covenant of good faith and fair dealing. On January 6, 1998, Opportunity answered the counterclaim and also alleged mutual mistake, and encumbrances on the property. On November 3, 1998, Ossewardes amended their counterclaim against Opportunity and Stocklen seeking a deficiency judgment for the specific deficiency amount they alleged they were due after the May 12, 1997, trustee's sale. Opportunity and Stocklen both separately answered the amended counterclaim on December 7, 1998.

The matter was tried without a jury on December 21, 1998. On March 30, 1999, the

---

1. Although this obligation is not contained in the written agreements, Ms. Ossewarde admitted to such a duty during the trial. The trial court judge, however, found that the agreements were complete on their face and contained no representations that the property could be immediately sold or developed or that sewer connections were available.

district judge entered a "Memorandum Opinion, Findings of Fact, Conclusions of Law and Order," finding in favor of Ossewardes against Opportunity on the deficiency judgment in the amount of $425,000.00, and final judgment was entered in the matter on April 6, 1999. The district judge did not rule with respect to Stocklen, but rather reserved jurisdiction pending further proceedings to determine any obligation Stocklen might have on his guarantee. On April 8, 1999, the district judge issued an I.R.C.P. 54(b) certificate with respect solely to Opportunity. Opportunity and Stocklen filed this appeal on April 21, 1999.

## II.

## NO FINAL ORDER FOR STOCKLEN

■ The preliminary issue that must be determined is whether there was a final order against Stocklen allowing him to appeal at this time. "[I]f an order or judgment ends the suit, adjudicates the subject matter of the controversy, and represents a final determination of the rights of the parties, the instrument constitutes a final judgment." *Davis v. Peacock,* 133 Idaho 637, 641, 991 P.2d 362, 366 (1999). The judgment, certified under I.R.C.P. 54(b), however, can be final with respect to one party to a suit, but not with respect to another party. I.R.C.P. 54(b); *Rife v. Long,* 127 Idaho 841, 844–45, 908 P.2d 143, 146–47 (1995).

In the instant case, the district judge reserved jurisdiction regarding Stocklen's liability. Opportunity has filed chapter 11 bankruptcy proceedings, but no evidence was presented at trial whether it was unable to pay the judgment, which was a condition precedent to Stocklen's liability on his guarantee. The district judge reserved jurisdiction in order to further determine whether the condition precedent was met and thus whether Stocklen had any liability on his guarantee.

We only decide today the issues raised by Opportunity, not Stocklen, because no final order has been issued with respect to Stocklen's liability, nor did the Rule 54(b) certificate include Stocklen.

## III.

## STANDARDS OF REVIEW

■ "[T]his Court exercises free review over the district court's conclusions of law." *J.R. Simplot Co. v. Western Heritage Ins. Co.,* 132 Idaho 582, 584, 977 P.2d 196 (1999). The standard of review of a non-jury trial court's findings of fact is set forth in Idaho Rule of Civil Procedure 52(a). *Williamson v. City of McCall,* 135 Idaho 452, 19 P.3d 766, 769 (citing I.R.C.P. 52(a)). I.R.C.P. 52(a) provides in pertinent part:

In all actions tried upon the facts without a jury ... the court shall find the facts specifically and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. Findings of fact shall not be set aside unless clearly erroneous. In application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses that appear before it.

*Id.* (quoting I.R.C.P. 52(a)). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *Id.* (citation omitted). "This Court will not substitute its view of the facts for the view of the district judge." *Id.* (citation omitted). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.*

## IV.

## BREACH OF CONTRACT

■ If the terms of a contract are clear and unambiguous, the interpretation of their meaning and legal effect are questions of law. *Idaho v. Hosey,* 134 Idaho 883, 886, 11 P.3d 1101, 1104 (2000) (citations omitted). The meaning of an unambiguous contract must be determined from the plain meaning of the words. *Id.* Where, however, the contract is deemed to be ambiguous, "interpretation of the contract is a question of fact that focuses on the intent of the parties." *Id.* "Whether

the facts establish a violation of the contract is a question of law over which this Court exercises free review." *Id.*

In the present case, the contractual terms of the original agreements and the amended agreements when construed together are ambiguous, making their interpretation a question of fact and entitling the trial court's findings to the substantial and competent evidence standard of review. *See id.* The original purchase agreement, entered into on August 4, 1995, to be effective beginning August 8, 1995, provided in part:

> 4. *Deeds: Closing.* Three deeds to the Property will be a good and sufficient Warranty Deeds in the form approved by OPPORTUNITY'S attorney. Each deed will convey good and clear title to the Property, subject solely to (a) provisions of existing zoning laws, (b) real estate taxes for the current tax year that are not yet due when the deed is delivered, (c) other exceptions accepted by OPPORTUNITY. In reliance upon OSSEWARDE'S representation that the Property shall have no clouds on the title within a certain period of time as specified below, OPPORTUNITY specifically reserves the right to determine acceptability of title until after the dates shown below. In the event OPPORTUNITY, in its sole, but reasonable discretion, determines that title is unacceptable, then OPPORTUNITY may, at its sole discretion, rescind the transaction in its entirety; sue and receive compensation for OSSEWARDE for misrepresentation, breach of warranty or other legal theory; or seek any other remedy allowed under this Agreement or the laws of the State of Idaho. (errors in original).

> 4.1. The three (3) deeds required the title conveyed by OSSEWARDE shall be unencumbered as specified above by the following dates:

> 4.1.1. First Warranty Deed for the first ten (10) lots described as *Lots 1–1 BEING ALL OF BLOCK 6 [handwritten in original]* shall have unencumbered title by August 31, 1995.

> 4.1.2. Second Warranty Deed for second ten (10) lots described as *Lots 1–6 BEING ALL OF BLOCK 3 LOTS 1–4 Block 1 [handwritten in original]* shall have an unencumbered title by September 30, 1995.

> 4.1.3. Third Warranty Deed for lots described as *Lots 5–7 BLOCK 1, Lots 1–7 BLOCK 2, Lots 1–3 & 9–17 Block 4, Lots 1–3 BLOCK 5 [handwritten in original]* shall have unencumbered title by October 20, 1995.

Paragraphs 4.1.1., 4.1.2., and 4.1.3. of the original purchase agreement appear to be initialed by the parties in the left hand margin. The parties also entered into a secured promissory note agreement on August 4, 1995. It provided in pertinent part:

> 2. *Payments.* Payments shall be made as follows: ONE HUNDRED NINETY–SEVEN THOUSAND FIVE HUNDRED DOLLARS ($197,250.00) [sic] shall be paid on or before December 31, 1995; THREE HUNDRED NINETY–FOUR THOUSAND FIVE HUNDRED DOLLARS ($394,500.00) shall be paid on or before September 30, 1996; and THREE HUNDRED EIGHTEEN THOUSAND ($318,000.00) shall be paid on or before December 31, 1997. *These sums shall be paid for partial reconveyance of the Property. So long as the Property remains available for reconveyance, the sums shall remain due. In the event the lots cannot be reconveyed from the Deed of Trust free of all encumbrances then no sums shall be due.* (emphasis added).

On October 3, 1995, the parties entered into an agreement to amend the original purchase agreement. There is no dispute that the amendment was supported by consideration. The amended agreement provided in pertinent part:

> C. The Parties have agreed to amend the Promissory Note lengthening the scheduled dates for payment and raising the amount of payment by OPPORTUNITY to OSSEWARDE. Therefore, the parties amend the Purchase Agreement to be consistent with the new scheduling dates and payment amounts.

> . . .

> NOW THEREFORE, we the undersigned, do hereby agree that the sales price of NINE HUNDRED NINE THOU-

SAND SEVEN HUNDRED FIFTY DOLLARS ($909,750) mentioned in the original Purchase Agreement be amended to NINE HUNDRED FIFTY THOUSAND DOLLARS ($950,000.)

. . .

The parties further agree to amend the schedule of payment to be as follows: The first twenty (20) lots shall be paid for on or before September 30, 1996, payment for these lots shall be TWENTY THOUSAND DOLLARS ($20,000) per lot for a total payment of FOUR HUNDRED THOUSAND DOLLARS ($400,000); the second twenty-five lots shall be paid for on or before September 30, 1997, payment for these lots shall be TWENTY–TWO THOUSAND DOLLARS ($22,000) per lot for a total payment of FIVE HUNDRED FIFTY THOUSAND DOLLARS ($550,000). *These sums shall be paid for partial reconveyance of the Property. So long as the Property remains available for reconveyance, the sums shall remain due. In the event the lots cannot be reconveyed from the Deed of Trust free of all encumbrances then no sums shall be due.* (emphasis added).

On the same day, the parties executed an amended promissory note, which contained substantially the same language as the amended purchase agreement. It provided in pertinent part:

2. *Payments.* Payments shall be as follows: The first twenty (20) lots shall be paid for on or before September 30, 1996, payment for these lots shall be TWENTY THOUSAND DOLLARS ($20,000) per lot for a total payment of FOUR HUNDRED THOUSAND DOLLARS ($400,000); the second twenty-five lots shall be paid for on or before September 30, 1997, payment for these lots shall be TWENTY–TWO THOUSAND DOLLARS ($22,000) per lot for a total payment of FIVE HUNDRED FIFTY THOUSAND DOLLARS ($550,000). *These sums shall be paid for partial reconveyance of the Property. So long as the Property remains available for reconveyance, the sums shall remain due. In the event the lots cannot be reconveyed from the Deed of Trust free of all encum-*

*brances then no sums shall be due.* (emphasis added).

■ The amended agreements should be construed together with the original agreements where possible. *See Silver Syndicate, Inc. v. Sunshine Mining Co.,* 101 Idaho 226, 235, 611 P.2d 1011, 1020 (1979). The making of a new contract does not necessarily abrogate a former contract unless it explicitly rescinds it, deals with the subject matter so comprehensively as to be complete in itself, or is so inconsistent with the first contract that the two cannot stand together. *Id.* Moreover, when a subsequently executed agreement specifically references and relies on a former agreement, the two are to be interpreted together, if possible. *Id.*

■ In the present case, the amended purchase agreement is incomplete and it specifically references the original purchase agreement, the original promissory note, and the amended promissory note. The amended promissory note, however, explicitly rescinds the former promissory note providing: "This Amended Note replaces the original note between the same parties of the same effective date in its entirety and is made in order to allow additional time for payments since the duties of OSSEWARDE as specified in the purchase agreement have not and can not be completed in a timely fashion." Thus, the original and the amended purchase agreement will be construed together, but the amended promissory note stands alone.

■ The primary aim in interpretation of all contracts is to ascertain the mutual intent of the parties at the time the contract was made. *Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980). If possible, the intent of the parties should be ascertained from the language of the agreement as the best indication of their intent. *E.g. Suchan v. Suchan,* 106 Idaho 654, 660, 682 P.2d 607, 613 (1984). Where the parties' intent cannot be understood from the language employed in the writing, intent becomes a question of fact to be determined in light of extrinsic evidence. *Id.* Further, when the purpose or objective of the parties is ascertainable, the trier of fact may accord it great weight. *Id.*

608

When read together, the amended purchase agreement and the original purchase agreement are ambiguous in their terms. Paragraph 4 of the original purchase agreement, as set forth above, seems to impose an unconditional duty of Ossewardes to provide clear title by or before the stated dates, beginning August 31, 1995. It further provides that if title was not provided by those time periods, Opportunity could rescind or sue for damages. Moreover, paragraph 17 of the original purchase agreement states that time is of the essence and any breach is a material breach.

The district judge, however, ruled that the amended purchase agreement and amended promissory note, although explicitly only extending the time in which Opportunity had to pay, by implication extended Ossewardes' deadlines to provide clear title to be equivalent to the time periods for the amended payment schedule. Thus, the district judge found that Ossewardes had no duty to provide clear title to the first set of lots until September 30, 1996, the date Opportunity's first payment was due under the amended promissory note.

The district judge pointed to the language of the amended purchase agreement quoted above for support of his interpretation. It provides: "So long as the Property remains available for reconveyance, the sums shall remain due. In the event the lots cannot be reconveyed from the Deed of Trust free of all encumbrances then no sums shall be due." The district judge found that this language modified the unconditional duty of Ossewardes to provide clear title, reasoning that the language would have no use—it would be surplusage—if Ossewardes' unconditional duty in the original purchase agreement to provide clear title by the dates provided in paragraph 4 (beginning August 31, 1995) was still in effect. The district judge thus found that Ossewardes were not required to provide immediate clear title, and thus concluded that the Loshbaugh lien did not place Ossewardes in default because they had until September 30, 1996 (the date the first lots were to be conveyed) to provide clear title to those lots, and the lien was removed entirely on August 7, 1996. The district judge further concluded that because Ossewardes were not in breach of the contract, Opportunity was thus in default by failing to make payments to Ossewardes under the terms of the promissory note.

Further evidence that the amended purchase agreement contemplated Ossewardes having more time to fulfill their obligations comes from the amended promissory note. It provides: "This Amended Note replaces the original note between the same parties ... to allow additional time for payments since the duties of OSSEWARDE as specified in the purchase agreement have not and can not [sic] be completed in a timely fashion." Although this was written before the Loshbaugh lien was filed, and probably referred to Ossewardes' apparent duty to complete the infrastructure, the language is still probative because it indicates the purpose of the extension was to give both parties more time to perform their respective duties rather than just more time to Opportunity to make its payments.

Opportunity argues that the parties did not act as though any of them believed that Ossewardes had until September 30, 1996, to provide clear title. For example, when Opportunity notified Ossewardes of the cloud on the title in a letter dated February 27, 1996, Ossewardes responded just two days later in a letter dated February 29, 1996, stating that they were "working diligently to clear the title" and asking Opportunity to notify them of any specific damages it suffered due to the cloud on the title.

The fact that Ossewardes were attempting to clear the lien, however, is not determinative of the issue of whether clear title was required at that time on the property under the terms of the contract, i.e., they could have simply been attempting to be accommodating. Further, "working diligently" could have meant that they intended to have clear title to the property by September 30, 1996. Finally, they might have thought that it was in their best interest to provide clear title or bond around individual lots even if not required to by the contract because if Opportunity sold the lots, Ossewardes would be more likely to get paid under the terms of the promissory note.

As noted above, the documents, when construed together are ambiguous regarding the required time frame for Ossewardes to provide clear title for the property. Therefore, the trial court's findings of fact with respect to what the contract required of the parties are entitled to a substantial and competent standard of review. The language pointed to by the district judge provides support for his interpretation that the amended agreements altered the time frame for Ossewardes to provide clear title to the property. Also, as noted, there was language in the amended promissory note that the reason it was amended was to allow more time for Ossewardes to satisfy their obligations under the contract. Moreover, because the original purchase agreement set forth the time period when payment was due and stated that the title for the various lots must be clear by the time payment was due, it is a logical interpretation that title was not required to be clear under the amended purchase agreement until payment was due for the specific lots. We hold there is substantial and competent evidence in the record to support the district judge's finding that title was not required to be clear until September 30, 1996, and thus Ossewardes were not in breach of contract, but Opportunity was by failing to make payments as specified by the contract.

## V.

### "EXHIBIT 6"

The district judge excluded "Exhibit 6" because he determined both that it was barred by the parol evidence rule and it was not relevant. Exhibit 6 is a letter dated August 7, 1995, written and signed by Bill Stark, and addressed to Stocklen. The letter set forth the breakdown price of the individual lots and the dates various lots were to be "taken down."

Relevancy rulings of the trial court are questions of law that are given free review on appeal. *De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 966 895 P.2d 564, 567 (1995). " 'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is a consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401.

There was no indication that Exhibit 6 was signed by Stark as an agent of Ossewardes, as he had done in the past when representing them. The letter from Stark was sent in his individual capacity, not as an agent of Ossewardes, and the district judge properly excluded the exhibit because it was not relevant to the dispute between Opportunity and Ossewardes. Because we uphold the trial court's ruling excluding the exhibit based on a lack of relevance, we need not consider the alternative basis of exclusion, the parol evidence rule.

## VI.

### PREJUDGMENT INTEREST

Idaho Code § 28–22–104 allows for prejudgment interest at a rate of twelve percent per year in cases of money due on an express contract. Prejudgment "[i]nterest should be allowed as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation." *Mitchell v. Flandro*, 95 Idaho 228, 228, 506 P.2d 455, 455 (1972).

The damages in the present dispute, however, were not liquidated or subject to a mere mathematical calculation, and thus the district judge erred in awarding prejudgment interest. *See Bouten Const. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 762, 992 P.2d 751, 757 (1999). In *Bouten*, we held that the trial court erred in awarding prejudgment interest under Idaho Code § 28–22–104. The claim of damages for the increased cost of construction was not liquidated or mathematically ascertainable because it had not been determined prior to judgment if the claim of damages was reasonable. *Id.* In *Bouten*, this Court also cited *Farm Dev. Corp. v. Hernandez*, 93 Idaho 918, 920, 478 P.2d 298, 300 (1970), where we "found that the price was set in the contract, but because there was conflicting evidence of the price actually paid and the actual value of the product, the amount of liability was unliquidated." *Bouten*, 133 Idaho at 762, 992 P.2d

at 757 (citing *Farm Dev. Corp.*, 93 Idaho at 920, 478 P.2d at 300).

In the present case, the district judge awarded prejudgment interest, to be paid from May 27, 1997, the date of the foreclosure sale, for the difference between the market value of the property and the amount due under the amended promissory note. Because the market value of the property was subject to dispute, the amount of damages was not liquidated or subject to mathematical calculation until judgment was entered. Thus, the trial court erred in awarding prejudgment interest under Idaho Code § 28–22–104, and that part of its order is reversed.

## VII.

### ATTORNEY'S FEES

■■■■ Ossewardes seek attorney's fees on appeal pursuant to the agreements between the parties, including the amended promissory note, which provides for attorney's fees to the prevailing party in litigation arising from the agreements. "Contract provisions for attorney's fees ... generally are enforced." *Ayotte v. Redmon*, 110 Idaho 726, 726–27, 718 P.2d 1164, 1164–65 (1986) (citations omitted). Because we affirm the trial court on all issues except the award of prejudgment interest, we hold that Ossewardes are the prevailing party on appeal and that they are entitled to reasonable attorneys fees under the terms of the agreement.

## VIII.

### CONCLUSION

We affirm the order of the district judge with respect to the action between Ossewardes and Opportunity except for the award of prejudgment interest, which we reverse. We also award reasonable attorney's fees to Ossewardes as well as costs.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, **CONCUR.**