# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44594

TODD J. PHILLIPS, in his capacity as
Trustee of Trust "A" of the Elliott Family
Testamentary Trust,

       Plaintiff-Appellant,

v.

RICHARD D. GOMEZ,

       Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2017 Term

2017 Opinion No. 113

Filed: November 8, 2017

Karel A. Lehrman, Clerk.

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

District court denial of request to recover actual damages, <u>affirmed</u>.

Nicholas Law Offices, Boise, for appellant. Charles J. Nicholas argued.

Fisher Law Office, PLLC, Meridian, for respondent. Steven Fisher argued.

---

BURDICK, Chief Justice.

This case arises from Richard Gomez's breach of a real estate agreement for the sale and purchase of residential real estate from Todd Phillips in his capacity as Trustee of Trust "A" of the Elliott Family Trust. Phillips appeals the Ada County district court's denial of Phillips's request to recover actual damages. After a bench trial, the district court held that Phillips's claim for breach of contract had been fully satisfied by Phillips's retention of the non-refundable earnest money as liquidated damages as provided by the agreement. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Todd J. Phillips, Appellant, is the trustee of Trust "A" of the Elliott Family Trust ("Trust"). In the spring of 2008, Phillips listed the Trust's real property (located at 1372 W. Wickshire Ct., Eagle, Idaho) for sale with a real estate agency. In the fall of 2008, Richard Gomez, Respondent, submitted several offers to purchase the property. The second offer, with amendments, was accepted on October 30, 2008.

The agreement was set forth in several documents,[1] the first being the RE-21 Real Estate Purchase and Sale Agreement ("RE-21"), which provided for the deal to be as follows: The sale of the described real property was to be for $660,000. With $66,000 earnest money to be deposited into the listing broker's trust account to be applied to the purchase price at closing, or, in the event Gomez could not close, Phillips would have the option of accepting the earnest money as liquidated damages, which would be Phillips's sole and exclusive remedy, *or* pursuing any other legal right or remedy.

The remaining documents in the agreement were amendments to RE-21. The amendments provided that the earnest money deposit of $66,000 was to be non-refundable following the inspection of the property and Gomez's attorney's review and acceptance of the contract documents. Gomez was to take possession of the house promptly after the deal was accepted under the terms of a Residential Lease, but the sale was not required to close until December 15, 2009, about a year after Gomez took possession.

When the agreement was accepted by both parties, Gomez paid the $66,000 non-refundable earnest money into the broker's trust account, and Gomez moved into the property under the Residential Lease provisions. The entire $66,000 was released from the broker's trust account and paid to Phillips, with a portion ($3,960) going to the real estate agent's commission, and the balance ($62,040) going to Phillips. The release of the earnest money was without restriction.

Around December 1, 2009, Gomez advised Phillips that he would not be able to close on time, and the parties began negotiating. Those negotiations resulted in Addendum #2 under which Phillips agreed to carry a $100,000 note from Gomez, with closing still set for December 15, 2009. On the day of closing, Gomez emailed Phillips explaining that due to the "drop in the value of the home, the real estate market and the lending crunch" he was unable to close on the loan for the property in time.

In January 2010, an agreement was reached for Gomez to remain in possession of the property under a month-to-month rental agreement. Gomez remained in possession until approximately May 31, 2010, thirty days after Gomez gave written notice to Phillips that he

---

[1] The agreement at issue consists of five documents: (1) an RE-21 Real Estate Purchase and Sale Agreement form; (2) an RE-11 Addendum form, marked #1; (3) an RE-11 Addendum form, marked #2; (4) a manuscript document titled "Counter-Offer #3"; and (5) Exhibit A to Counter-Offer #3, marked "Residential Lease."

would be vacating the property. Gomez vacated the premises in a timely manner without incident.

On February 4, 2010, Phillips sent Gomez a letter demanding that Gomez perform under RE-21 or Phillips would pursue a claim against Gomez for any deficiency after the house re-sold. Gomez did not respond. Phillips relisted the property for sale in the spring of 2010. An appraisal was obtained indicating the value of the property in the spring of 2010 to be $540,000. In June 2010, Phillips received and accepted an offer to sell the property to an unrelated third party for $530,000. The sale closed on June 21, 2010, with a purchase price of $527,500.

On August 13, 2012, Phillips sent Gomez another letter demanding payment for the lost "benefit of the bargain" damages sustained as a result of Gomez's failure to purchase the property as agreed. Phillips sought the difference between the proceeds of the sale ($527,500) and the price agreed upon by Gomez ($660,000), less the earnest money received ($62,040—$66,000 minus the $3,960 commission), for a total damage claim of $70,460 plus interest. Gomez did not respond and did not pay any of the amounts claimed in the demand.

On November 6, 2013, Phillips filed his complaint against Gomez for breach of contract. Phillips claimed damages in the amount of $60,143.66 after giving Gomez credit for the $66,000 earnest money.[2] The case was tried as a bench trial on September 1, 2015. On September 23, 2015, the district court entered its judgment in favor of Gomez and against Phillips.

On September 6, 2016, this Court entered its order dismissing the appeal without prejudice because this Court did not timely receive a copy of a final judgment that conformed with Idaho Rule of Civil Procedure 54(a). On October 6, 2016, this Court dismissed Docket #43678 without prejudice because the conforming judgment was not timely entered. On October 7, 2016, Phillips filed his second notice of appeal, which initiated the instant appeal, and, pursuant to this Court's November 9, 2016, order augmenting the prior appeal, this matter came before the Court.

## II.    ISSUES ON APPEAL

---

[2] This damage claim consists of: (1) the $51,620.50 difference between what the sale proceeds would have been if Gomez had closed and what the sale proceeds were upon closing with the third-party buyer; (2) $3,960 commission paid to Coldwell Banker; (3) $1,776 trustees fees associated with the closing of the sale to Gomez; (4) $2,187.90 attorney fees associated with the closing of the sale to Gomez; and (5) $1,000 as the cost of the appraisal obtained after Gomez's breach.

1. Did Phillips pre-elect the earnest money as liquidated damages when the parties contracted to make the earnest money non-refundable and immediately transferrable to Phillips's account without restrictions?

2. Did the language in the agreement give Phillips the option of accepting the non-refundable earnest money *and* pursuing actual damages?

3. Is either party entitled to attorney fees on appeal?

## III.   STANDARD OF REVIEW

"[T]his Court exercises free review over the district court's conclusions of law." *Opportunity, LLC v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002) (citing *J.R. Simplot Co. v. W. Heritage Ins. Co.*, 132 Idaho 582, 584, 977 P.2d 196, 198 (1999)). "The standard of review of a non-jury trial court's findings of fact is set forth in Idaho Rule of Civil Procedure 52(a)." *Id.* (citing I.R.C.P. 52(a)). Idaho Rule of Civil Procedure 52(a) provides in pertinent part:

> In all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. Findings of fact shall not be set aside unless clearly erroneous. In application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses that appear before it.

"In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *In re Williamson*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001) (citing I.R.C.P. 52(a)). "This Court will not substitute its view of the facts for the view of the district judge." *Id.* (citing *Carney v. Heinson*, 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999)). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.* (citing *Carney*, 133 Idaho at 281, 985 P.2d at 1143).

## IV.   ANALYSIS

**A. The district court did not err in concluding that Phillips made an advance election of remedies to accept the earnest money as liquidated damages.**

Phillips contends he never accepted, elected, or agreed to accept the earnest money as liquidated damages in lieu of his actual damages when he contracted to make the earnest money non-refundable. Rather, Phillips maintains that he "elected to proceed with an action to recover the Trust's actual damages of approximately $60,000.00 over and above the amount of the

earnest money Gomez released to Phillips." Thus, Phillips contends, although he accepted the earnest money, he never accepted the earnest money *as liquidated damages*.

The district court, on the other hand, found that the amendments to RE-21, making the "earnest money deposit non-refundable and immediately available to [Phillips] without restriction was, to work, an advance election of remedies . . . to accept the earnest money deposit as liquidated damages." As such, "the damages for this breach are, by contract, the liquidated damages, which damages have been fully paid and satisfied by [Gomez] by the provisions pertaining to the earnest money deposit." The district court's conclusion is supported by competent and substantial evidence.

Phillips maintains that there is no "language anywhere in the agreement between the parties suggesting" Phillips accepted, elected, or agreed to accept the non-refundable earnest money as liquidated damages, or that Phillips "had conceded or given up [his] right to make an election to accept earnest money as liquidated damages, seek specific performance or seek to recover its actual damages." Phillips's argument is unavailing.

As provided by this Court in *Potlatch Education Association v. Potlatch School District Number 285*:

> When interpreting a contract, this Court begins with the document's language. In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument. Interpreting an unambiguous contract and determining whether there has been a violation of that contract is an issue of law subject to free review. A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical. Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact.

148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010) (internal citations and quotations omitted).

Of the documents forming the agreement, the following provisions are particularly relevant to the issues on appeal: (1) RE-21, paragraphs 3(A) and 28; (2) Addendum #1, item #2; and (3) Counter-Offer #3, paragraph 2.

Paragraph 3(A) of RE-21 provides,

> $66,000.00 EARNEST MONEY: BUYER hereby deposits Sixty-Six Thousand and Zero/100 DOLLARS as Earnest Money evidenced by: personal check and a receipt is hereby acknowledged. Earnest Money to be deposited in trust account upon acceptance by all parties and shall be held by: Listing Broker . . . for the benefit of the parties hereto.

Paragraph 28 of RE-21 provides,

DEFAULT: <u>If BUYER defaults</u> in the performance of this Agreement, SELLER has the *option* of: (1) accepting the Earnest Money as liquidated damages <u>or</u> (2) pursuing any other lawful right and/or remedy to which SELLER may be entitled . . . . SELLER and BUYER specifically acknowledge and agree that if SELLER elects to accept the Earnest Money as liquidated damages, such *shall be SELLER's sole and exclusive remedy.*

(emphasis added). Addendum #1, item #2 provides,

The $66,000.00 down payment is *non-refundable* and will be released to seller upon buyer's written acceptance of the inspection and credited to buyer at closing.

(emphasis added). Finally, paragraph 2 of Counter-Offer #3 provides,

The Buyer shall pay earnest money in the $66,000.00 which earnest money shall become *non-refundable* and shall be paid directly to Seller immediately on the satisfaction of Buyer's inspection contingency and the contingency of the Buyer's attorney's review of this document and the attached lease . . . . The earnest money shall be credited to buyer toward the purchase price at closing.

(emphasis added).

"The amended agreements should be construed together with the original agreements where possible." *Opportunity, LLC*, 136 Idaho at 607, 38 P.3d at 1263 (citing *Silver Syndicate, Inc. v. Sunshine Min. Co.*, 101 Idaho 226, 235, 611 P.2d 1011, 1020 (1979)). However, "addenda are controlling over any inconsistent provisions in a pre-printed, fill-in-the-blank agreement." *Johnson v. Lambros*, 143 Idaho 468, 474, 147 P.3d 100, 106 (Ct. App. 2006) (citing I.C. § 29-109).

Further, a party's subjective intent is immaterial to the interpretation of the contract. *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 614, 167 P.3d 748, 751 (2006). Instead, courts will give full "force and effect to the words of the contract without regard to what the parties of the contract thought it meant or what they actually intended it to mean." *Id.* (quoting 17 Am. Jur. 2d *Contracts* § 347 (2004)).

Although "courts in some states have held that the presence of an option to choose between liquidated damages and actual damages renders a liquidated damages provision unenforceable," *Ravenstar LLC v. One Ski Hill Place LLC*, No. 14CA2401, 2016 WL 335142, *1–9 (Colo. App. Jan. 28, 2016), Idaho is one of several states that have upheld provisions allowing sellers to choose between liquidated and actual damages. *See, e.g.*, *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 258, 846 P.2d 904, 909 (1993).

Here, the rights of the parties were defined by the agreement. Under the terms of RE-21, the amount of liquidated damages for this agreement was to consist of the $66,000 earnest

money paid by Gomez and held in the broker's trust account. In the event Gomez defaulted, paragraph 28 of RE-21 gave Phillips the option of either accepting the earnest money as liquidated damages *or* pursuing any other lawful right or remedy to which Phillips was entitled. Thus, before the addendum amending the form agreement, the earnest money would not be turned over to Phillips until or unless one of the following events occurred: (1) it was credited against the purchase price at closing, (2) the broker turned it over to Phillips as liquidated damages in the event of a default if Phillips so elected, or (3) in the event Phillips elected "any other lawful right and/or remedy" to which Phillips may be entitled, it was to be separately held pending resolution of the matter.

However, the parties amended and added terms to RE-21, making the earnest money non-refundable and immediately available to Phillips without any restrictions. The amendments did not make any mention of what would happen if Gomez defaulted and Phillips decided to pursue actual damages instead of liquidated damages, being that Phillips had already transferred and retained the earnest money thirteen months prior to the scheduled closing date. The parties could have stipulated that such retention of the earnest money is not an acceptance or election of liquidated damages; however, the parties did not do so. Therefore, a plain reading of the agreement indicates that Phillips pre-elected his remedy for Gomez's breach of the contract.

Moreover, there is language in three other provisions in Counter-Offer #3 supporting the district court's conclusion that Phillips pre-elected the earnest money as liquidated damages. Each provision similarly addresses a material breach and similarly makes no mention of actual damages.

For example, paragraph 5 of Counter-Offer #3 provides,

[B]uyer/Lessee's failure to make any lease payment when the same is due and payable shall constitute a *material breach* of Buyer's obligations the terms of this Real Estate Purchase and Sale Agreement and . . . Seller may, at its sole election, terminate this Agreement and the said lease and *retain Buyer's earnest money payment,* together with any lease payments Buyer may have made, *as liquidated damages* and Buyer shall have no further right or claim of interest in the subject premises . . . . Buyer will remain responsible to Seller for any damages Seller may cause to the premises while occupying the same and Seller may recover any such damages in addition to the liquidated damages hereinabove provided for.

(emphasis added).

Paragraph 13 of Counter-Offer #3 provides in relevant part, "[i]n the event this sale does not close, Coldwell Banker Tomlinson Group may retain the $3960.00 being paid to it as its sole

compensation for its services as an agent in this matter." Although this provision does not address a remedy specifically available to Phillips, this provision shows that the parties contemplated the realtor's remedy being a portion of the earnest money.

Finally, paragraph 14 of Counter-offer #3 provides,

> If Buyer should file for bankruptcy at any time prior to the closing of this transaction, Buyer agrees that such filing shall constitute a *material breach* of the terms of both this Purchase and Sale Agreement and its lease with Seller and Seller may . . . retain any and all monies paid to it by Buyer, whether in the *form of earnest money* or lease payments, *as liquidated damages* which sum Buyer and Seller agree would be fair and reasonable liquidated damages to Seller for such breach of this Agreement . . . .

Thus, although the amendments to RE-21 did not specifically state that making the earnest money non-refundable was an advance election of remedies, when Phillips availed himself of the earnest money, he foreclosed his ability to pursue actual damages. *See, e.g.*, *McMullin v. Shimmin*, 349 P.2d 720, 720–21 (Utah 1960) (holding that the seller's retention of the deposit evidenced an election of liquidated damages by the seller). Further, the parties' intent is supported by other similar provisions in the amendments. In effect, Phillips was entitled to the full measure of the liquidated damage remedy from the outset. To conclude otherwise would permit recovery of both liquidated and actual damages, a result contrary to the language of the agreement and the decisions of this Court. *See, e.g.*, *Lipsky*, 123 Idaho at 257–58, 846 P.2d at 908–09.

Phillips offers outside evidence[3] for this Court to consider in ascertaining the parties' intent. However, because the parties' intent can be determined from the agreement itself, this Court will not consider this evidence.

"In the absence of ambiguity, a document must be construed by the meaning derived from the plain wording of the instrument." *Brown v. Greenheart*, 157 Idaho 156, 166, 335 P.3d 1, 11 (2014) (citing *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001)). The language of the agreement is free from conflicting interpretations by reasonable persons. It is clear that Phillips initially, under the terms of RE-21, had the option of accepting the earnest money as liquidated damages or bringing an action for recovery of actual damages. However, when the parties amended RE-21, thereby making the earnest money non-refundable and

---

[3] A Memorandum of Understanding Re: Terms of Month to Month Lease, and two demand letters from Phillips's attorney.

immediately transferable to Phillips, Phillips pre-elected the earnest money as liquidated damages, regardless of what Phillips subjectively intended.

**B. The damages award Phillips seeks is not permitted either by the terms of the agreement or by law.**

Phillips contends that the agreement gave Phillips the "option of either accepting the non-refundable earnest money [he] had received as liquidated damages or, giving [Gomez] full credit for the non-refundable earnest money, instituting an action to recover its actual damages." Phillips's argument is unavailing.

As the district court correctly found, the agreement gave Phillips an option between liquidated damages *or* actual damages, but it did not permit Phillips to choose both. Specifically, paragraph 28 of RE-21 states in relevant part, "SELLER has the option of: (1) accepting the Earnest Money as liquidated damages *or* (2) pursuing any other lawful right and/or remedy to which SELLER may be entitled. . . . If SELLER elects to accept the Earnest Money as liquidated damages, such *shall be SELLER's sole and exclusive remedy . . . .*" (emphasis added). The word "or" is "a disjunctive particle used to express an alternative or to give a choice of one among two or more things." *City of Blackfoot v. Spackman*, 162 Idaho 302, __, 396 P.3d 1184, 1189 (2017) (quoting *Markel Int'l Ins. Co., Ltd v. Erekson*, 153 Idaho 107, 110, 279 P.3d 93, 96 (2012). Thus, the RE-21 agreement gave Phillips the choice to elect either liquidated damages or actual damages, but did not provide Phillips both remedies without an actual election.

Phillips cites this Court to *Lipsky* to support his argument that the agreement itself permitted Phillips to retain the non-refundable earnest money as partial satisfaction *and* pursue actual damages for the remaining balance. However, as Gomez correctly contends, *Lipsky* does not stand for that proposition. And more importantly, *Lipsky* did not involve a non-refundable earnest money deposit.

In *Lipsky*, this Court held that the presence of a liquidated damages clause in an earnest money agreement did not preclude the non-defaulting seller from recovery of actual damages suffered when the buyer breached the agreement. 123 Idaho at 257, 846 P.2d at 908. The standard printed real-estate purchase and sale agreement form provided for the purchaser to pay $1,000 in earnest money and contained a liquidated damages clause. *Id.* at 255, 846 P.2d at 906. Specifically, the form provided in relevant part, that in the event of the buyer's breach,

> [t]he earnest money shall be forfeited and considered as liquidated damages to Seller, and Buyer's interest in the premises shall be immediately terminated . . . .

> Such forfeiture and acceptance by Seller or Broker of the earnest money as liquidated damages does not constitute a waiver of other remedies available to Seller or Broker.

*Id.* at 257, 846 P.2d at 908. The buyer informed the seller that he did not intend to close and would forfeit the earnest money he had paid. *Id.* at 255, 846 P.2d at 906. The seller refused to accept the earnest money as liquidated damages and brought suit for actual damages. *Id.* at 256, 846 P.2d at 907.

This Court reasoned that the contractual provision that allowed the non-defaulting seller to retain the earnest money as liquidated damages without "a waiver of other remedies indicated that the seller's acceptance of earnest money as liquidated damages would be optional, with the seller preserving her right to seek any other remedies available to her." *Id.* at 257, 846 P.2d at 908. This Court further explained that, "In spite of the fact that the clause is poorly written, it is clear from a reading of the agreement as a whole that the seller has the option of accepting the forfeited earnest money as liquidated damages, bringing an action for recovery of actual damages, *or* seeking specific performance." *Id.* at 257–58, 846 P.2d at 908–09 (emphasis added); *see also Noble v. Ogborn*, 717 P.2d 285, 287 (Wash. Ct. App. 1986) (explaining that a "liquidated damages clause does not preclude a party from suing for actual damages if that right is preserved in the contract between the parties.").

In this case, it is undisputed per RE-21, that Phillips *had* the option of either accepting the earnest money as liquidated damages or pursuing any other lawful right or remedy (actual damages). The plain language of RE-21 supports these two different legal choices. However, Phillips essentially contends that the language of the agreement does not confine Phillips to liquidated damages; rather, he may retain the earnest money as *partial satisfaction* for his actual damages, whatever they may be. *Lipsky* did not address this issue.

Idaho has no case construing whether the "or" language contained in the default provision—paragraph 28 of RE-21—permits a non-defaulting seller the option of retaining an earnest money deposit *and* pursuing actual damages for any remainder not covered by the earnest money. However, in 1962, the Wisconsin Supreme Court held, on facts almost identical to these, that the seller, who retained the down payment under a provision of the contract, exercised the option to treat the down payment as liquidated damages and therefore, no cause of action for actual damages remained to him. *Zimmerman v. Thompson*, 114 N.W.2d 116, 117–18 (Wis. 1962).

In *Zimmerman*, the seller and the buyer entered into a real estate contract whereby the buyer agreed to pay $500 down and thereafter the remaining balance of $43,000. *Id.* at 116. The buyer defaulted, causing the seller to re-sell the property to a third party. *Id.* The seller retained the $500 down payment and brought a lawsuit "against the buyer for $2,000 which the seller alleges was the actual damage caused by the buyer's default after crediting the $500 kept by the seller." *Id.* at 117. The provision in the contract recited:

> Should the undersigned Buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the Seller, be forfeited as liquidated damages and shall be paid to or retained by the Seller, subject to deduction of broker's commission and disbursements, if any.

*Id.* at 116–17. The court held that this specific provision in the contract

> [g]ives the seller an option to take liquidated damages or to take whatever actual damages he can prove, but it does not give him the right to both. If he chooses liquidated damages he may retain the down payment without further fuss or bother. If he chooses actual damages the contract gives him no additional present, simultaneous, right to retain the down payment. He has retained it and is now trying to expand the limited right of retention into a right to keep the money and apply it on whatever larger damages he can establish. The contract does not so provide.

*Id.* at 117; *see also Osborn v. Dennison*, 768 N.W.2d 20, 30 (Wis. 2009) (explaining that "[t]he overriding principle in this commonplace consumer transaction is that, when the buyer defaults and the seller wants damages (not specific performance), the seller has the *option* to seek either liquidated damages or actual damages, but not both") (citing *Galatowitsch v. Wanat*, 620 N.W.2d 618, 622–25 (Wis. Ct. App. 2000)).

Here, Phillips retained the $66,000 earnest money deposit as he rightfully could do, but then brought action against Gomez for the remaining actual damages after "crediting" Gomez the $66,000 kept by Phillips. Phillips is trying to expand the limited right of retention into a right to keep the deposit and apply it to whatever larger damages he can establish. The contract does not so provide. Though Phillips contends the earnest money was a down payment toward actual damages, there is no plain language in any of the five documents showing that this was the parties' intent. Such a clause that allowed Phillips to keep the earnest money and pursue actual damages would have been easy to include, and should have been included if that was what the parties so intended. The default clause in this agreement gave Phillips the option of accepting the earnest money as liquidated damages *or* pursuing any other legal right or remedy, but it did not give him the right to both. Because the parties did not expressly reserve such a right, the earnest

money as liquidated damages is Phillips's exclusive remedy. Accordingly, no cause of action for actual damages remains to him.

### C. Neither party is entitled to attorney fees on appeal.

Phillips and Gomez both request attorney fees and costs on appeal in their statements of issues in their briefs. However, neither party has presented any argument on this issue in their briefs as required under Idaho Appellate Rules 35(a)(6) and 35(b)(6).

"Where a party requesting attorney fees on appeal cites the applicable statutes but does not present argument 'with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon,' " this Court will not address the issue. *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 874, 993 P.2d 1197, 1205 (1999) (quoting *Weaver v. Searle Bros.*, 131 Idaho 610, 616, 962 P.2d 381, 387 (1998)). Because neither party presented the necessary argument, this Court declines to award attorney fees on appeal.

## V.    CONCLUSION

We affirm the judgment in favor of Gomez. We do not award attorney fees on appeal because neither party presented argument on this issue in briefing. We award costs on appeal to Gomez.

Justices JONES, HORTON, BRODY and KIDWELL, J., Pro Tem, **CONCUR.**